FRITSCHE, Respondent, vs. FRITSCHE, Appellant.

*May 26 — June 21, 1890.*

*Easements: Right of way: Ambiguity in grant: Practical construction: Alteration of boundaries by re-survey.*

A right of way from the land of the grantee to a public road was, by the terms of the grant, to be "on or near" a certain boundary line which, at the nearest point (its eastern end), was about twenty rods south of the road. As located by the grantor and used by the grantee for many years, the right of way began to diverge from said boundary line at the western end thereof, and reached the road at a point about north of the eastern end. A re-survey afterwards established the boundary line about three rods further south than the parties had supposed it to be. *Held,* that the grantee was still entitled to the right of way as originally located and used, and that the grantor could not compel him to follow a route nearer to said boundary line. The grantee was also entitled to a right of way over said three rods by the shortest practicable route.

APPEAL from the Circuit Court for *Crawford* County.

This action was brought to recover damages for the obstruction by the defendant of a private right of way of the plaintiff. In the year 1874, and before that time, the parties owned in common certain lands in Crawford county. In that year they agreed upon a partition of such lands, and carried out their agreement by the execution of mutual conveyances in accordance therewith. The conveyance by *Charles Fritsche*, the defendant, to the plaintiff, *Henry Fritsche*, contains the following grant: "The right of way from

*Henry Fritsche's* residence to the Bridgeport road, on or near the line between *Charles Fritsche* and Peter Barrette." The land over which such right of way runs belongs to the defendant. The following plat, as hereinafter explained, sufficiently shows the location of the right of way, and the objects or monuments mentioned in the grant:

In 1875, *Charles* erected a fence on the dotted line A B C. At that time the parties supposed the line A B D was the boundary between their respective lands and those of *Charles* and Barrette. The fence diverged from such supposed boundary line at the point B, then supposed to be Barrette's corner, and curved north, and then east, around or up a hill to the Bridgeport road at C. *Henry* used and enjoyed his right of way along the south side of this fence to the Bridgeport road, uninterruptedly, and without objection on the part of *Charles*, until 1885. In that year it was found by a survey of the lands of the parties, which is admitted to be correct, that the dotted line A B D is not the true boundary between the lands above mentioned, but that such boundary line is about three rods south thereof, on the line F G H. Thereupon, in 1886, *Charles* removed the fence A B C south, and placed it on the true boundary line just mentioned, from the point F nearly to G, and then

deflected it on his own land northeast, to about the line
B D, and extended it east nearly to the point D, thence
north to E; leaving a way for *Henry* between the fence and
Barrette's north line and defendant's east line, to the
Bridgeport road at E.   *Henry* insisted upon his right to use
the old way, and removed the fence, which prevented him
from doing so, at G, near Barrette's corner.   *Charles* re-
stored the fence, and thereupon *Henry* brought this action
to recover damages for thus closing the old way.   The fore-
going facts appear from the pleadings and proofs.

The jury found for the plaintiff, and assessed his damages
at a nominal sum.   A motion on behalf of defendant for a
new trial was denied, and judgment for the plaintiff entered
pursuant to the verdict.   The defendant appeals from the
judgment.

For the appellant there was a brief by *Webster & Miller*,
and oral argument by *D. Webster*.

For the respondent the cause was submitted on the brief
of *Fuller & Ward*.

Lyon, J.   There is no controversy concerning the plaint-
iff's right of way from his residence to Barrette's corner,
point G.   He travels upon his own land to that point, and
is content to do so.   The question in controversy is whether
he has a right of way from that point to the old way at B,
and along the same to the Bridgeport road at C, or whether
such right of way extends from G to D, between the plaint-
iff's fence and Barrette's north line, to a point near defend-
ant's east line, and from thence north, along that line, to
the Bridgeport road at E.

The terms of the defendant's grant of the right of way
to the plaintiff are somewhat ambiguous in respect to the
location thereof.   The location therein specified is " on or
near the line between *Charles Fritsche* and Peter Barrette."
The Bridgeport road on defendant's land, at the nearest

point, is probably about twenty rods distant from the boundary line between the lands of the defendant and Barrette. Hence, to answer the calls of the grant, the right of way in question would necessarily have to diverge that distance from such boundary line. The question is, Where shall such divergence commence? Does it commence near the points, G and B, as claimed by plaintiff, or near point D, as claimed by the defendant? Its extension to the Bridgeport road at either point is "near" the boundary line mentioned in the grant, within its obvious intent and meaning, and fulfills the terms and requirements thereof. ·

By erecting the fence between B and C, in 1874, the defendant fixed the northern limit of the right of way. He also permitted the plaintiff, without objection, to use and enjoy the same along the south side of the fence contiguous thereto, for many years. Thus, by his own voluntary act and long acquiescence, the defendant gave a construction to his grant, and practically explained the ambiguity in its terms. The plaintiff adopted that construction by constantly using such right of way from B to C along the south side of the fence. It must be held that such right of way is established on that line.

It cannot be doubted that the plaintiff has a right of way over some line from his own land to point B, for without it he would have no use of such right from B to C. Over what line may he exercise this right? The answer seems plain. He may exercise it over the shortest practicable line extending from his own land to point B. This is a reasonable adjustment of the rights of the parties to the altered conditions growing out of the correction of the boundary line, because it saves the grant, and at the same time does the least possible injury to the defendant. The defendant has obstructed such line by erecting a fence across it, and has thus deprived the plaintiff of his right of way. Hence the latter is entitled to recover in this action, and

the judgment in his favor for nominal damages should not be disturbed.

The material facts in the case being practically undisputed, and the right of the plaintiff to recover in the action being clear, the numerous exceptions taken by the defendant on the trial are of no importance and will not be determined.

*By the Court.*— The judgment of the circuit court is affirmed.