LADEN ET AL., RESPONDENTS, *v.* ATKESON, APPELLANT.

(No. 8,135.)

(Submitted April 23, 1941. Decided June 28, 1941.)

[116 Pac. (2d) 881.]

*Mr. John Collins,* for Appellant, submitted an original, a reply and a supplemental brief, and argued the cause orally.

*Mr. Theodore F. McFadden,* for Respondent, submitted an original and a supplemental brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

Plaintiffs are the owners of certain agricultural lands in Beaverhead county, and a water right appurtenant thereto in the Beaverhead River. Water is carried to their lands through certain ditches and sloughs located on the lands of defendant. A dam is maintained near a point in the river from which the main diversion ditch is taken. To keep the dam and ditches leading therefrom in repair, plaintiffs must enter upon defendant's lands with dam building materials and other paraphernalia and vehicles for those purposes.

It is alleged in the complaint that plaintiffs entered upon defendant's lands in furtherance of these purposes from March, 1931, until May, 1937, at which latter time defendant instructed plaintiffs to desist and refrain from so doing, or persist at their own risk. Plaintiffs refrained and thereafter instituted this suit for the purpose of quieting title to certain alleged easement rights in defendant's lands. They were successful before the lower court, sitting without a jury, and were adjudged entitled to enter defendant's lands over a certain described road in order to reach the head of their diversion ditch, and also were given the use of whatever lands on either side of the ditches were reasonably necessary to plaintiffs' repair thereof. The ditch right across defendant's lands is not contested. From the judgment and decree defendant brings this appeal.

The errors assigned complain, in addition to the granting of any right in plaintiffs to travel across the defendant's lands, of the extent and generality of the court's findings and judgment, as follows: ''(1) In granting to plaintiffs the right to travel over defendant's lands 'upon and across said lands by such other route as will afford them a reasonable and practicable means of ingress to and egress from the head of their said Diversion Ditch under all the conditions then obtaining.' (2) In granting to plaintiffs the right to travel at will, across appellant's lands 'by such a route as will afford them a

reasonable and practicable means of ingress to and egress * * * .' (3) In awarding to plaintiffs a right not only to maintain the dam already constructed upon appellant's lands, but also to use 'so much and such parts of said lands at the head of said Diversion Ditch and along the easterly bank of said Beaverhead River, as may be reasonably needed and required for the purpose of constructing a dam in said River.' (4) In permitting the plaintiffs to deviate from the alleged line of travel described in paragraph XVI of the Findings whenever that line 'is not reasonably susceptible of travel.' (5) The findings do not support the conclusion that a right of way for travel across the land of defendant was selected and used in such a definite way as to impress an easement upon that land. (6) The effect of the decree is to give to plaintiffs the use of an indefinite amount of defendant's land, as a secondary easement. (7) The evidence is not sufficient to warrant the establishment of a right of way, of indefinite width, for travel, upon either side of plaintiffs' ditch.''

On the trial of the cause much testimony was introduced relative to the ways by which plaintiffs and their predecessors passed over defendant's lands in attending to the dam and ditches. Whether the efforts of counsel were directed toward proving or disproving a prescriptive right in plaintiffs to cross by a certain prescribed route, and the success or otherwise of that proof seems, under the law governing this case, immaterial in view of the court's findings and the evidence adduced in support thereof. It is sufficient to say, the court did not recognize a prescriptive right in plaintiffs, but rather ''a right in the nature of a secondary easement.''

Generally speaking, ''an easement has been asserted to be a right which one person has to use the land of another for a specific purpose or a servitude imposed as a burden upon land.'' (17 Am. Jur., sec. 2, p. 923.) For example, an easement in a ditch through the land of another. (*Dahlberg* v. *Lannen*, 84 Mont. 68, 274 Pac. 151.)

''The right to enter upon the servient tenement for the purpose of repairing or renewing an artificial structure, constituting

an easement, is called a 'secondary easement,' a mere incident of the easement that passes by express or implied grant, or is acquired by prescription." (2 Thompson on Real Property, p. 343; 19 C. J., sec. 208, p. 970; 26 Cal. Jur., p. 163; and Jones on Easements, secs. 811 and 812, pp. 653, 654.) To illustrate: "A person having an easement in a ditch running through the land of another may go upon the servient land and use so much thereof on either side of the ditch as may be required to make all necessary repairs and to clean out the ditch at all reasonable times." (17 Am. Jur., sec. 108, p. 1004; *Dahlberg* v. *Lannen,* supra; *Felsenthal* v. *Warring,* 40 Cal. App. 119, 180 Pac. 67.)

Kindred to the above is the equally well established rule that: "Such secondary easements can be exercised only when necessary and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement." (Jones on Easements, sec. 811, p. 653; 19 C. J., sec. 208, p. 970; 2 Thompson on Real Property, p. 343.) Or, as it is sometimes stated: "The owner of a dominant estate having an easement, has the right to enter upon the servient estate and make repairs necessary for the reasonable and convenient use of the easement, doing no unnecessary injury to the servient estate." (Jones on Easements, sec. 814, p. 655; 17 Am. Jur., sec. 108, p. 1004.)

These rules are founded on the maxim of the law, that when the use of a thing is granted, everything is granted by which the grantee may reasonably enjoy such use, that is, rights that are incident to something else granted—here to water and ditch rights. (*Yellowstone Valley Co.* v. *Associated Mortgage Investors,* 88 Mont. 73, 290 Pac. 255, 70 A. L. R. 1002; 2 Thompson on Real Property, p. 343; 19 C. J., sec. 208, p. 970; 26 Cal. Jur., p. 163.)

With these general rules we agree. In reviewing the lower court's findings and judgment, under the guidance of these rules, the principal question presented, and in our opinion determinative of all the issues, is, Does the court's decision, based upon the evidence, decree to plaintiffs practical and reasonable ways of travel upon defendant's lands for the necessary main-

tenance of their irrigation system, inflicting no unnecessary injury to such lands or defendant's use thereof?

From the voluminous record we have concluded that possibly more than one route does exist across defendant's lands to the head of plaintiffs' diversion ditch. The question as to the particular route that will result in the minimum of injury to defendant's lands, having in mind his convenience in the use thereof, was determined by the court to be the precise way alleged to have been used by plaintiffs in the matter of attending to their irrigation system upon defendant's lands. The record amply supports and justifies the action taken by the court in decreeing to plaintiffs the use of the way just mentioned. Despite any evidence tending to show some deviation from the particular line of travel alleged, it is significant and compelling in support of the court's findings that the way decreed to plaintiffs' use constituted the only roadway across defendant's lands reasonably susceptible to their needs and purposes.

In our opinion, the way decreed to plaintiffs for purposes of going to and from the head of their diversion ditch constituted a reasonable one under the record. There is evidence that this particular way, or approximately so, had been used for a number of years by plaintiffs and predecessors of a much earlier time in the matter of the maintenance of the irrigation system involved. It substantially appearing that this was the usual and customary mode of entering upon defendant's lands for purposes of repair, we are inclined to believe that that showing constitutes good evidence of the reasonableness of the route used in the absence of a showing to the contrary. The record does not preponderate with evidence of any other route or way designed to accommodate plaintiffs' needs in a manner less injurious to defendant's lands than the way awarded, or one more reasonable or practicable to all concerned. At best it only presents a conflict. In the absence of that preponderative showing, we have no alternative but to affirm the lower court in respect to the route granted. In this situation, we think a rehearsal of the evidence would serve no useful purpose.

In paragraph IX of the judgment and decree the court recognizes in plaintiffs the right to proceed to the head of the diversion ditch over the particular road described, ''at all times the same is reasonably susceptible of travel; and if and when said roadway is not reasonably susceptible of travel, the plaintiffs shall during such times pass over, upon and across said lands by such other route as will afford them a reasonable and practicable means of ingress to and egress from the head of their said 'Diversion Ditch' under all of the conditions then obtaining.'' Defendant complains of this holding because, he asserts, it fails to take into account one well established rule relative to secondary easements, namely, that there is no burden upon the servient owner (defendant here) in the absence of an agreement, to keep in repair for the dominant owners the means necessary to the enjoyment of the primary easement—here the roadway to the head of the diversion ditch. (17 Am. Jur., sec. 108, p. 1003, and 19 C. J., sec. 228, p. 980.) The easement for travel upon defendant's lands is a property right belonging exclusively to the plaintiffs, the dominant owners (17 Am. Jur., sec. 108, p. 1003), and they are responsible for the necessary upkeep of the way in so far as their own use of it is concerned.

Dominant owners cannot legally be permitted to roam all over the servient tenement in cases such as this; nor can they select a new route of travel, without the consent of the servient owner, whenever the particular route set aside for that purpose becomes founderous, impassable, or merely inconvenient. The duty is primarily upon them, in such instances, to repair their route rather than materially deviate therefrom. (17 Am. Jur., sec. 88, p. 989.) In this regard Corpus Juris states the rule to be: ''One having an easement in another's land is bound to use it in such a manner as not to injure the rights of the owner of the servient tenement. If the owner of an easement exceeds his rights either in the manner or the extent of its use, or if he enters upon or uses the land of the servient estate for any unauthorized purposes, he is guilty of a trespass and the servient owner may maintain such action, although no actual damages have been sustained by him.'' (19 C. J., sec. 247, p.

989.) In other words, an action for damages will lie on due proof of abuse of the easement right. (*Holm* v. *Davis*, 41 Utah, 200, 125 Pac. 403, 44 L. R. A. (n. s.) 89.)

The judgment, we believe, needs no modification as to this holding. We do not think it may be so broadly interpreted as defendant fears. That there may be no misunderstanding of it, we have here set out the controlling rules with respect to the matters covered by finding No. 9. Plaintiffs, depending upon the factual situation, must repair their way where reasonably practicable; otherwise the possibility would exist of having the burden upon the servient tenement needlessly increased contrary to the underlying law of all easements.

Complaint as to the court's award to plaintiffs of the use ▮▮ of "so much and such parts of said lands [of defendant] at the head of said 'Diversion Ditch' and along the easterly bank of said Beaverhead River, as may be reasonably needed and required for the purpose of constructing a dam in said River near the head of said 'Diversion Ditch' or for the purpose of making any repairs necessary to the maintenance of said dam etc.," is without merit. As before noted, the ditch right in plaintiffs is not contested and it apparently is admitted by all, that in order for plaintiffs to take their water from the river a dam or some other artificial structure or device is needed for the purpose. Here a dam in the river serves that purpose. In Jones on Easements, section 814, p. 655, the following observation is made in that connection: "An easement to maintain a dam necessarily involves the right to repair it, and this involves also the right to go upon the land for that purpose. The easement includes not merely the right to maintain and repair the breastwork of the dam, but also the banks at the sides of it, and to go upon the land of the servient tenement for that purpose. It also includes the right to restore a dam that has been carried away by a freshet."

In the same test, section 820, p. 659, the author recognizes the right to use adjacent soil for purposes of repair in this language: "In repairing a ditch or water-race the owner of the easement has the incidental right to use the adjacent soil for

this purpose, in case the repairs cannot be made in any other way. The fact that the earth so used is the property of the owner of the servient tenement does not settle the question whether the owner of the easement may take it for the purpose of making repairs. 'The owner of the easement is privileged to repair in all cases where the easement cannot be enjoyed without repairs; and in making them, he may dig up the soil and otherwise use and encumber it, doing no more injury than is necessary, when such course is indispensable to the enjoyment of the easement.' ''

The court's award is ''for the purpose of constructing a dam in said River, near the head of said 'Diversion Ditch' or for the purpose of making any repairs, etc.'' We do not interpret this as being an unrestricted award to plaintiffs permitting them to construct a dam anywhere in the river they may desire, as appellant here seems to fear, but rather that plaintiffs are granted the right to maintain their dam near the head of the diversion ditch. A material change of location, of course, could not be made without the consent of the servient owner, absent a showing of prescriptive or other legal right thereto. (19 C. J., sec. 232, p. 982.)

With respect to the award to plaintiffs of the use of so much of defendant's lands on either side of their ditches as may be reasonably necessary for purposes of maintenance and repair, we find no fault. What is said above relative to the dam is equally applicable to the ditches. True, the amount allowed for such purposes is indefinite and uncertain. In the very nature of such an easement the extent thereof cannot be predetermined with certainty. It may be that portions of plaintiffs' ditches may never need attention other than casual inspection. Naturally, then, little or no land on either side of such portions will be needed for purposes of repair or otherwise. Other parts of the system may need constant attention and repair, in which event the secondary easement requirements of plaintiffs may be much greater. The court's judgment in that instance, as in all others, limits the use by plaintiffs to a reasonable amount of defendant's land. That the term ''reasonable'' is relative, we

concede, but in each instance the amount used would constitute a question of fact, determination of which would disclose whether the privilege of reasonable usage had been abused. As before noted, action will lie for such abuse.

Omniscient or occult indeed would be the vision of the court that could foresee the precise amounts of land to be needed for repairs and maintenance along the ditches by plaintiffs in the future. (Compare *Neville* v. *Loudon Irrigating Canal etc. Co.,* 78 Colo. 548, 242 Pac. 1002.) Had the award along either side of the ditches been of continuous strips of 10, 15, 20 or any other specific number of feet, the court might have been subject to the correction necessitated in *Knudson* v. *Frost,* 56 Colo. 530, 139 Pac. 533, where the court in condemning such a specific award stated: "It will be seen from what has been said that the judgment of the court, whether based upon the oral agreement or upon such rights as follow the written grant, and as incident thereto, was erroneous in that it granted an absolute easement in two strips of land, each 20 feet wide and on either side of plaintiffs' ditch. This gives the plaintiffs the absolute right to the use of all this land at all times and whether necessary for the purpose or not, while for the purpose of repair they may require only the use of defendant's lands for the necessary distance on either side of plaintiffs' ditch in certain places and at certain times; yet it cannot be said that this is necessary on all parts of defendant's lands along the right of way, nor at all times. The right is based upon necessity, and the use is confined to the times, places, and extent necessary."

It should be noted that in contrast to *Knudson* v. *Frost,* supra, the court in the present case expressly limited plaintiffs' use of defendant's land on either side of the ditches to an amount "reasonably needed and required for the purposes of cleaning or inspecting said ditches, or making any repairs thereto necessary to the maintenance thereof." By that holding the court grounded its judgment on the very thing which the court in *Knudson* v. *Frost* deemed so essential, namely, the necessity of the case. No absolute amount is here granted, but only a reasonable amount which in turn is contingent upon the

necessity of entering upon the land for the purposes of maintenance and repair.

In conclusion we repeat that in the very nature of plaintiffs' right to go upon defendant's lands, a secondary easement right for the purpose of obtaining full enjoyment of their primary easement consisting of their ditch right, including the dam in the river, they could not be foreclosed of a reasonable exercise of that privilege, nor successfully interfered with by injunction or otherwise in the absence of a showing of abuse of those rights.

We have considered all the specifications of error, but find no reversible error therein.

The judgment is affirmed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.

Rehearing denied September 26, 1941.