Fairchild, J.
 

 To overcome a serious state of affairs due to the presence of surface waters and a rather extensive marsh, the appellant shortly after purchasing a farm, originated a plan for draining his land and to some extent benefiting the respondent’s land. In carrying out this plan, he succeeded in getting the easement set forth in the statement of facts. His right to the relief he now seeks depends entirely upon the scope and meaning of this 1913 agreement.
 

 The condition that existed when appellant became owner had its source in the- natural surroundings. The appellant testified that “before the drainage of this land all this low land of mine was eighteen-inch bogs, grew coarse grass where these bogs were, that extended somewhat into the defendant’s lands.” The witness did refer to a watercourse defining the words “merely as descriptive, in other words it has the same effect as storm sewer in the city.” It was in the hope of redeeming some of the marshland that the tile drain was provided. And it does appear that the conditions were considerably improved. By virtue of the agreement a drain was located on a certain line. It had served during many years. The benefits achieved might be increased, possibly, by a further improvement of the drainage system. The appellant, prompted by the desire to- better things, has attempted to change the location of the ditch. ■ He had some talk with respondent with respect to this but does not claim that the relocation of the ditch was or is to be made pursuant to any license granted by the defendant in 1941. That position could not be maintained, for any permission to relocate the ditch granted in those conversations by the respondent was qualified by the condition that a culvert be constructed by the appellant. By refusing to
 
 *270
 
 accept the condition and constructing the new ditch, appellant chooses to stand upon rights which the written instrument of 1914 gave him. An examination of that contract shows that the greatest possible latitude was given appellant in the construction of an “open ditch, tile drain or both of sufficient size as to make a proper - and sufficient outlet forever for any drainage system” that the appellant might establish on his land. The agreement also provided that such ditch or drain might be deepened and kept in repair. The agreement contemplates the adoption of a type of drainage system determined upon by the appellant. But there is nothing to indicate that, having once determined the type of system he proposed to construct and the location of the drain, appellant could at his discretion construct at á different location a new type of drain at any time he pleased. The language in the contract does not warrant that construction. In 1914, the selection of the location of the right of way was made. Appellant is bound by that choice.
 
 S. W. Woolworth Co. v. Vogelsang,
 
 176 Wis. 366, 187 N. W. 179;
 
 Fritsche v. Fritsche,
 
 77 Wis. 266, 45 N. W. 1088; 17 Am. Jur. p. 988, sec. 87;
 
 Laden v. Atkeson,
 
 112 Mont. 302, 116 Pac. (2d) 881;
 
 Sabin v. Rea,
 
 176 Minn. 264, 223 N. W. 151;
 
 Haslett v. Shepherd,
 
 85 Mich. 165, 48 N. W. 533;
 
 Jennison v. Walker,
 
 11 Gray (Mass.), 423;
 
 Ritchey v. Welsh,
 
 149 Ind. 214, 48 N. E. 1031;
 
 Winslow v. Vallejo,
 
 148 Cal. 723, 725, 84 Pac. 191. In the
 
 Winslow Case,
 
 the court said: “The rule is well settled that where a grant of an easement is general as to the extent of the burden to be imposed on the servient tenement, an exercise of the right, with the acquiescence and consent of both parties, in a particular course or manner, fixes the right and limits it to the particular course or manner in which it has been enjoyed.” The court in that case showed, that as a matter of interpretation, the written instrument did not grant a larger right than the one exercised by the grantee. And the interpretation
 
 *271
 
 of the written agreement in the case before us, shows also that the grantee of the easement had the fight to choose the location and type of ditch to be installed but that such election was binding on him. The appellant seems to think that having constructed a tile outlet and not an open ditch, he is not relocating his easement, by the construction of an open ditch in another place in 1941. While thé agreement of 1913 allowed appellant to construct either a tile drain or open ditch or both, it contemplated the construction of a complete system of drainage at the time the system was installed and the agreement is not to be interpreted to mean the choice of a tile outlet in 1914 and the addition of an open ditch thirty years later in an entirely new location.
 

 The appellant insists that the respondent in maintaining the roadway is blocking the course of a natural watercourse and should be enjoined from maintaining such an obstruction. The evidence supports the trial judge’s finding that the open ditch constructed by appellant in 1941 does not follow any natural watercourse. The roadway has been in existence since 1852. The natural spread of the water is a condition resulting from the drainage of surface waters. It has none of the characteristics necessary to bring it within the legal definition of a natural watercourse.
 
 Hoyt v. Hudson, 27
 
 Wis. 656;
 
 Harvie v. Caledonia,
 
 161 Wis. 314, 154 N. W. 383;
 
 Eulrich v. Richter,
 
 37 Wis. 226.
 

 The appellant has shown no right to relocate the ditch or to trespass upon the land of respondent, except as he may repair the 1914 drainage ditch or trench.
 

 By the Court.
 
 — Judgment affirmed.