No. 98-107

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 17

298 Mont. 116

993 P. 2d 701

CELESTE G. ENGEL

Plaintiff and Respondent, and Cross-Appellant,

v.

ERIC C. GAMPP and PAULA LAMMERS GAMPP,

Defendants and Appellants, and

Cross-Respondents

APPEAL FROM: District Court of the Twenty-First Judicial District,

In and for the County of Ravalli,

The Honorable Ed McLean, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

David L. Pengelly, Missoula, Montana; Philip J. O'Connell, Missoula, Montana

For Respondent:

Robert J. Phillips, Tammy Wyatt-Shaw, Phillips & Bohyer, Missoula, Montana

_____

Submitted on Briefs: March 18, 1999

Decided: January 27, 2000

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 Eric C. Gampp and Paula Lammers Gampp (Gampps) appeal from the judgment of the Twenty-First Judicial District Court, Ravalli County, awarding attorney fees to Celeste G. Engel (Engel) as the prevailing party. Engel cross-appeals, claiming the District Court erred in determining the scope of the injunction which it ordered in her favor.

¶2 We affirm in part, and reverse in part.

¶3 We address the following issues on appeal:

1. Did the District Court err in concluding that Engel was the prevailing party, pursuant to

§ 70-17-112(5), MCA?

2. Did the District Court grant Engel an injunction too narrow in scope given the findings of fact and conclusions of law entered in this matter?

**Factual and Procedural Background**

¶4Like most complex litigation involving an irrigation ditch, this dispute arose from a simple misunderstanding between neighbors. Whatever goodwill existed between the parties was irrevocably dissolved on April 6, 1995, when Engel's son, Tom, drove through the Gampps' unlocked gate, up their driveway, and parked on their lawn for the alleged purpose of performing a routine inspection of the Cole Ditch. The ditch diverts water from Big Creek, which is located near Victor, Montana. The ditch runs first through the Gampps' property and then crosses Engel's adjacent property, providing both with water for their pastures and other irrigation uses.

¶5Apparently, the rumors of "attack-trained" rottweilers that purportedly patrolled the Gampps' property did not deter Tom Engel in his mission that day. With a shovel in hand, he blithely walked across the Gampps' lawn in the general direction of the ditch, passing within 20 yards of their house. His unannounced presence on their property led to a confrontation between Tom and both Paula and Eric Gampp, resulting in an exchange of harsh words, and finally in their demand that Tom leave the property. In sum, Tom claimed he had a legal right to enter their property in the manner in which he chose that day; the Gampps, who had purchased the property in June of 1994, claimed that neither he nor anyone else had such a legal right.

¶6On December 7, 1995, Celeste Engel filed suit to quiet title to her ditch easement. Specifically, she claimed she had a legal right to access the Cole Ditch and its headgate for the purpose of performing inspections, maintenance, and repairs by driving onto and across the Gampps' property. This alleged "historic" right included traversing the Gampps' property from the end of their driveway "by jeep or on foot approximately another 1/4 mile to the headgate which provides a point of diversion from Big Creek." Engel claimed that the Gampps were aware of this entire route at the time they purchased the property "because said route was visible and apparent on the premises." She further alleged that this route--which is essentially the route her son took in April of 1995--is the "only reasonable way to gain access to the portions of the Cole Ditch located on what is now the Gampp property for purposes of maintaining or repairing it or regulating the headgate."

¶7Engel further claimed that during the irrigation season of 1995, the Gampps locked the gate to their property, thereby making the access to her headgate "inaccessible." She also alleged that the Gampps had advised her and her agents that "they had no right to cross [the Gampps'] land to access their headgate or maintain their ditch and threatened [Engel's] agent with physical harm and harm from [the Gampps'] dogs when he attempted to inspect the headgate." She alleged that the Gampps had represented to various parties that their rottweilers "were attack trained" and that they "run loose" on the Gampps' property.

¶8Attached to the complaint was a copy of restrictive covenants which prohibit the ownership of more than two dogs "as pets" or allowing "any dog or cat to roam freely over the land . . ." The covenants do, however, permit an owner to "raise . . . small numbers of domestic animals." Engel claimed the Gampps kept at least five rottweilers, and would later testify that she understood the dogs were kept in a kennel and raised for money. Paula Gampp would testify that, at the time of trial, she owned three rottweilers, which she kept for breeding and show purposes.

¶9The Gampps do not deny that Engel has a secondary easement, pursuant to § 70-17-112, MCA, which affords her the right of access to the Gampps' property. This particular statute provides that all persons who have a canal or ditch easement also have a secondary easement to "enter, inspect, repair, and maintain a canal or ditch." Section 70-17-112(1), MCA. As the District Court would find, this secondary easement is generally limited to whatever land on either side of the ditch is reasonably necessary to perform such inspections, repairs and maintenance. The District Court found that "Engel and her agents have accessed her headgate and point of diversion to inspect and regulate the water flow by walking *along* the Cole Ditch." This established route, however, is not once mentioned in Engel's complaint.

¶10Even so, the statute does not define the location or scope of a secondary easement. Rather, the location and scope are determined by a reasonableness standard: whatever access is reasonably necessary to maintain and repair the ditch without unreasonably burdening the servient owner. Consequently, an ongoing dispute over *where, how, when* and *why* Engel could rightfully enter the Gampps' property *in addition to the footpath* eventually resulted in this lawsuit. Although this dispute for the most part was resolved at trial, which party "prevailed" in determining the location and scope of the secondary easement, and, accordingly, whether an encroachment or impairment occurred, is now in contention on appeal. Section 70-17-112(2), MCA, provides that "[n]o person may

encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water." Section 70-17-112(5), MCA, provides that "[i]f legal action is brought to enforce the provisions of this section, the prevailing party is entitled to costs and reasonable attorney's fees."

¶11The determination of the reasonable location and scope of this secondary easement, and what may therefore be deemed an impairment or encroachment, requires a fundamental understanding of the underlying facts, beginning with the ditch itself.

¶12The source of water for Cole Ditch, Big Creek, flows east from the Bitterroot mountain range and traverses the southern edge of the Gampps' property. Each irrigation season, water is diverted into Cole Ditch at the western end of the Gampps' property, and flows north, northeast, and then east, until it eventually passes through the northwest corner of Engel's adjacent property. The Gampps as well as Engel have rights to irrigate from Cole Ditch, along with several other down-flow property owners. Again, the Gampps do not deny that all parties with rights to Cole Ditch may access their property along either side of the ditch for such purposes as regulating the head gates, cleaning out the ditch, and routine inspection. In fact, a rough footpath near the ditch on the Gampps' property has apparently existed for at least 25 years for this purpose.

¶13The problem lies in the fact that the route along the ditch is by no means the most convenient for all necessary repairs and maintenance. The ditch as it crosses the respective parcels is not located near a road. The surrounding terrain is forested and steep in places. Thus, to follow the Cole Ditch from the western border of Engel's 80-acre parcel, through the Gampps' 104-acre parcel, to the headgate on Big Creek cannot be accomplished by any other practical means than on foot.

¶14Vehicle access to the Gampps' property requires driving west up River Run Road, a private road that runs parallel to Big Creek on the southern boarder of Engel's property. The road ends at the gate to the Gampps' property, where a fence running north-to-south separates their property from Engel's. A graveled entrance way continues west through the gate for approximately one-quarter mile, where it ends at a shed and garage which lie east of the house. From that point, there is no other established vehicle route to Cole Ditch. It was there, at the end of the Gampps' private entrance road near the garage, that Tom Engel parked in 1995, and proceeded across their lawn on foot. It is undisputed that in the past, prior to the Gampps owning the property, repairs and maintenance on the ditch required

that vehicles and horses carry equipment and materials across the property from this same location.

¶15Thus, the simple misunderstanding between the parties is whether, in fact, Engel's statutory secondary easement means that she has not one, but two means of access to the Gampps' property. In essence, this was the nature of her son's confrontation in April of 1995, when he drove as far onto the Gampps' property as the road permitted, and then struck out across their yard taking the shortest distance to the ditch. As the court's findings clearly indicate, he took this action after having performed the same kind of routine inspection in 1994 by following the traditional route along the ditch footpath. He likewise knew at the time that the Gampps had made it clear that they did not want vehicles driving onto their property without permission.

¶16The Gampps contend that it would only be reasonable that Engel give them notice if and when ditch repair or maintenance requires access with a vehicle. Since purchasing the property in 1994, such repairs have not been necessary. They contend that they alone should have keys to their gate. Further, they contend that under no circumstances should a party be allowed to access the ditch by freely driving onto their property and then driving or walking across their lawn or coming near their home.

¶17Engel, on the other hand, firmly maintains that her statutory rights, coupled with historic use, accord her the privilege of motorized access onto and across the Gampps' property--essentially the same route taken by Tom Engel in 1995--without notice or permission. Thus, Engel alleges that the Gampps' refusal to either remove the lock or provide her with a key to the gate, as well as allowing their dogs to roam at large in violation of their mutual covenants, have interfered with her secondary easement in violation of § 70-17-112, MCA.

¶18Underlying this dispute is the fact that Engel and her husband, from 1975 to 1978, owned both parcels. In 1975, Al Engel installed a locked gate to the 104-acre parcel. He seldom if ever left this gate unlocked and posted no trespassing signs. He performed much of the routine maintenance on the ditch himself. Thus, much of the "historic use" did not actually involve the use of any statutory secondary easement rights due to this unity of ownership. Even so, Al Engel allegedly provided keys to other Cole Ditch users down flow from his property. There is also evidence, however, that Al Engel nevertheless required other ditch owners to ask his permission or notify him prior to accessing his property by vehicle, and that, historically, other parties with ditch rights walked the

footpath.

¶19In 1978, pursuant to a divorce settlement, Al Engel took sole ownership of what is now the Gampps' property. Al developed the property, building a house and a garage. He also improved the property by landscaping, including the establishment of a large lawn, which he kept mowed and well-maintained. Also, a caretaker, Russell Weihert, assisted the Engels in irrigating and maintaining the ditch from the early 1980s until 1994. Weihert would testify that under no circumstances was he allowed to use any vehicle for the purpose of performing routine maintenance and inspections on the Cole Ditch. Al Engel, according to Weihert, was adamant about maintaining the pristine quality of the property.

¶20In 1990, Al Engel sold the western 104-acre parcel to Todd Fiegel. The District Court would find that Al told Fiegel that vehicular access to the property had been solely by his [Engel's] approval; otherwise, irrigators had to access their ditches on foot. The court would further find that "irrigators were not allowed vehicular access into the property without first obtaining his [Fiegel's] permission.

¶21During Fiegel's ownership, two notable events occurred. Repairs were made to the headgate, and then to a flume on the Cole Ditch. Fiegel apparently allowed access to his property for these repairs, which mostly were a joint effort among the ditch owners. Materials and equipment were apparently hauled across his property using four-wheel all-terrain vehicles, a tractor, and pack horses. Other than these two events, routine maintenance was performed by Weihert or the Engels by walking along the ditch. During Fiegel's ownership, Russell Weihert performed caretaking services for both Fiegel and the Engels, including maintaining the ditch, and therefore possessed a key to the locked gate.

¶22Weihert continued to provide caretaking services for the Engel's after Fiegel sold the property to the Gampps in June of 1994. At that time, he was instructed by Al Engel that he must walk the ditch at all times. Al Engel also instructed Weihert to install a gate on what is now Engel's northern property line, which allowed access to the Cole Ditch footpath without driving onto what is now the Gampps' property.

¶23This matter came to trial on June 4, 1997. No claims for damages were presented to the court; rather, the court adjudicated the respective rights of the parties concerning the location and scope of Engel's secondary easement rights. The District Court issued its Findings of Fact, Conclusions of Law and Order on August 20, 1997. The court issued a second Order on December 10, 1997, determining the issue of attorney's fees. Finally, on

February 18, 1998, the court issued a third Order, which addressed Engel's motion to amend the August 20, 1997 Findings of Fact, Conclusions of Law and Order.

¶24The court concluded in its August 20, 1997 Order that "[a]ccess which allows for the passage of vehicles and other motorized equipment is and has been historically necessary to repair Engel's headgate." Thus, the court concluded if vehicle access is necessary for "major repairs and maintenance," Engel must use the route designated by Eric Gampp in his testimony. This route was not the same historical route asserted by Engel in her complaint. Rather, this access route requires vehicles to enter the Gampps' gate, cross a pasture, and enter a gate at the far north end of the property, a route which the Gampps themselves established at their own expense. The court further concluded that the "daily or weekly inspection and checking of the water flow would be across Mrs. Engel's west property line and then alongside the Cole Ditch," along the "existing pathway."

¶25The court also issued what the Gampps argue are several conflicting conclusions. In conclusions 13 and 33, the court determined that the Gampps "have encroached upon and impaired [Engel's] easement by locking the gate onto their property and otherwise impeding the access of concerned parties by verbally threatening those persons and by allowing their Rottweilers to run at large," and "have interfered with Celeste Engel's ditch rights or ditch easements." These conclusions served as a basis for awarding attorney's fees to Engel in the court's December 10, 1997 Order.

¶26In conclusion 23, however, the court concluded that there "was not a necessity that required the utilization of vehicles over the Gampp property by [Engel] and that the vehicles were not used to the benefit of the ditches but to antagonize the Gampps." The court ordered that if vehicle access is required, Engel must give notice to the Gampps. The court did not expressly require the Gampps to provide Engel with a key to their gate or unlock the gate at designated times. In conclusion 6, however, the court stated that "Montana law does not require the ditch owner to notify the servient landowner before entering thereon to access the ditch or related equipment," and cited to this Court's decision in *Sharon v. Hayden* (1990), 246 Mont. 186, 803 P.2d 1083.

¶27The court also ordered that the Gampps are permanently enjoined from housing more than two adult dogs on their property. Further, the court ordered that the dogs cannot run "at large" from seven to nine each morning. Yet the court determined that "allowing unrestrained trained Rottweilers to roam in and around the Gampp residence in what is termed the curtilage, does not violate the covenant preventing dogs from 'running at

large.'" In its February 18, 1998 Order, the court determined that:

[N]o evidence was presented establishing that the Gampps' dogs were running at large, i.e. freely roaming the property outside the boundaries of the curtilage surrounding the Gampp residence . . . . [t]hus, the Court concludes that the evidence at trial shows that the Gampps are complying with the covenant, and this Court sees no need to permanently enjoin the Gampps from allowing their rottweilers to remain untethered or kenneled.

¶28The court also concluded that "River Run Road provides the most reasonable access to [Engel] for purposes of inspecting, repairing and maintaining her ditch easement." The court nevertheless concluded that the "location of the secondary easement for routine inspection and maintenance purposes is along the existing pathway adjacent to the Cole Ditch."

¶29The court, in its December 10, 1997 Order, determined that "the primary issue in this matter was whether the Gampps were wrongfully interfering with [Engel's] statutory secondary easement rights to . . . Cole Ditch." The court determined that due to the Gampps' actions, they had interfered or encroached on Engel's easement rights. Accordingly, the court determined that Engel was the prevailing party, entitling her to attorney's fees and costs pursuant to § 70-17-112(5), MCA, in the amount of $40,000. Nevertheless, the District Court, in its August 20, 1997 conclusions of law, stated that the "Gampps are entitled to some offset of their costs and attorney's fees expended in defending this action as both parties have prevailed in certain aspects of this case."

¶30The Gampps appeal the award of attorney's fees to Engel as the prevailing party, and Engel cross-appeals the scope of the injunction ordered by the District Court in her favor.

## Standard of Review

¶31This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous. Rule 52(a), M.R.Civ.P. A district court's findings are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed. *Whalen v. Taylor* (1996), 278 Mont. 293, 299, 925 P.2d 462, 465. Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing

party. *Roberts v. Mission Valley Concrete Indus., Inc.* (1986), 222 Mont. 268, 271, 721 P.2d 355, 357.

¶32We review a district court's conclusions of law to determine whether those conclusions are correct. *Hollister v. Forsythe* (1995), 270 Mont. 91, 93, 889 P.2d 1205, 1206. If a district court concludes that one party has prevailed and is entitled to attorney's fees, we review that conclusion to determine if it is correct. *Rod and Rifle Inn, Inc. v. Giltrap* (1995), 273 Mont. 232, 234, 902 P.2d 38, 40.

¶33Furthermore, the granting of an injunction is discretionary and this Court will sustain such grant unless an abuse of discretion is shown. *Curran v. Department of Highways* (1993), 258 Mont. 105, 107, 852 P.2d 544, 545.

## Discussion

### *Issue 1*

*Did the District Court err in concluding that Engel was the prevailing party, pursuant to § 70-17-112(5), MCA?*

¶34The District Court, in its December 10, 1997 Order, identified the "primary issue" as whether "the Gampps were wrongfully interfering with [Engel's] statutory secondary easement right to . . . Cole Ditch." Based on its own prior findings and conclusions issued August 20, 1997, the court determined that Engel had "historic, as well as statutory rights, to access the [ditch] by foot for routine supervision and maintenance, and by vehicle and necessary equipment for repairs." The court determined that due to the Gampps' intimidation, threats, rottweiler ownership, and locking their entry gate, "such action . . . constituted interferences or encroachments on [Engel's] easement rights." Thus, the court determined that Engel was the prevailing party, and rounded down her requested fees to $40,000, acknowledging that the Gampps "have prevailed in some important aspects of this matter pursuant to § 70-17-112, MCA."

¶35The Gampps contend that no prevailing party emerged from this contest, and thus the statutory provision, § 70-17-112(5), MCA, does not apply. Section 70-17-112 provides:

**Interference with canal or ditch easements prohibited.** (1) A person with a canal or ditch easement has a secondary easement to enter, inspect, repair, and maintain a canal or

ditch.

(2) No person may encroach upon or otherwise impair any easement for a canal or ditch used for irrigation or any other lawful domestic or commercial purpose, including carrying return water.

. . . .

(5) If a legal action is brought to enforce the provisions of this section, the prevailing party is entitled to costs and reasonable attorney's fees.

¶36 Notwithstanding any of the court's conclusions that they interfered with Engel's easement rights, the Gampps maintain that Engel did not actually prevail on all of her claims she raised in bringing suit. The Gampps argue that, at best, Engel ended up where she began, with a footpath as an undisputed secondary easement along the Cole Ditch, and the requirement that she give notice before accessing the Gampps' locked gate for the limited purposes of maintenance or repairs that require a vehicle. Additionally, they assert that the vehicle route ordered by the court is the one that they established and therefore Engel's "historic" route was rejected by the court.

¶37 Consequently, they argue, the "legal action" brought by Engel did not serve to "enforce" her ditch or secondary easement rights under § 70-17-112, MCA; rather, the court merely clarified and established the rights of the respective parties. Therefore, the Gampps assert that the District Court's second order, which awarded fees to Engel as the prevailing party, was inconsistent with the court's August 20, 1997 and February 18, 1998 orders, which they argue supports their position that Engel, as a matter of law, did not "prevail."

¶38 As a matter of law, the legal conclusion that one party encroached or otherwise impaired another party's ditch easement rights does not necessarily mean that the latter was the "prevailing party" pursuant to § 70-17-112(5), MCA. For example, we have held that where each party sustains damages due to the other party's "failure to grasp fully their respective rights and responsibilities," a finding that there is no prevailing party as contemplated by § 70-17-112(5), MCA, is correct. *Knudsen v. Taylor* (1984), 211 Mont. 459, 463-64, 685 P.2d 354, 357.

¶39 In *Knudsen*, the servient owner, Taylor, undisputedly impaired Knudsen's ditch rights

when he impeded the water flow by installing culverts--necessary for his own access--that were too small. Knudsen, in turn, claimed he was exercising his secondary easement rights when he entered Taylor's property and removed the culverts. We concluded that the district court's injunctive order, which in part prohibited Taylor from obstructing the ditch flow and Knudsen from interfering with Taylor's right to install an appropriate culvert on his own property, was "a victory and a loss for both sides" and affirmed the district court's conclusion that there was no prevailing party pursuant to § 70-17-112(5), MCA. *Knudsen*, 211 Mont. at 463-64, 685 P.2d 357.

¶40In order to be deemed a "prevailing party" for the purposes of § 70-17-112(5), MCA, we have strictly held that a party must successfully prevail on *all* claims raised pursuant to this statute. *See*, *e.g.*, *Sharon v. Hayden* (1990), 246 Mont. 186, 188, 803 P.2d 1083, 1085 (affirming award of attorney's fees to party who had prevailed "completely" in asserting secondary easement rights and proving encroachment). In a recent decision, we affirmed a district court's determination that a party which had "prevailed on *all* issues" was entitled to attorney fees as a matter of law. *Reiman v. Anderson* (1997), 282 Mont. 139, 148, 935 P.2d 1122, 1127 (emphasis added). Likewise, where a party brought an action under § 70-17-112, MCA, and then failed to prevail on *any* of his claims, the other party was entitled to costs and fees. *Boylan v. Van Dyke* (1991), 247 Mont. 259, 267, 806 P.2d 1024, 1029.

¶41Here, the Gampps argue that Engel did not prevail on all of her claims. We agree. In bringing this action, Engel did not even acknowledge the existence of the Cole Ditch "footpath" route, which the district court eventually concluded was the primary secondary easement for the purpose of daily or weekly routine inspections and maintenance. We conclude that this determination was based on substantial credible evidence, and was in fact set forth in the Gampps' Answer to Engel's claim.

¶42Engel, to the contrary, insisted that vehicle access onto and across the Gampps' property was the "only reasonable way to gain access to the portions of the Cole Ditch located on what is now the Gampp property for purposes of maintaining or repairing it or regulating the headgate." She claimed that the Gampps were aware of this entire route at the time they purchased the property "because said route was visible and apparent on the premises." The District Court's findings and conclusions demonstrate that these claims are unsupportable. Unlike the parties in *Sharon* and *Kephart,* who successfully asserted their rights to an *existing* secondary easement right, we conclude that the court here essentially established a new, additional secondary easement as a means of resolution to a dispute involving parties who have failed to "grasp fully their respective rights and responsibilities

concerning the ditch." *Knudsen*, 211 Mont. at 463, 685 P.2d at 357.

¶43The substantial evidence relied on by the court shows that the alleged "historic" access involving vehicles crossing the property, beyond the Gampps' entrance drive at their garage, failed to leave any mark that was "visible and apparent" as Engel claimed. The primary authority relied on by the District Court, *Laden v. Atkeson*, which sets forth the rules governing secondary ditch easements in Montana, states:

Dominant owners cannot legally be permitted to roam all over the servient tenement in cases such as this; nor can they select a new route of travel, without the consent of the servient owner, whenever the particular route set aside for that purpose becomes founderous, impassable, or merely inconvenient. The duty is primarily upon them, in such instances, to repair their route rather than materially deviate therefrom.

*Laden v. Atkeson (1994), 112 Mont. 302, 308, 116 P.2d 881, 884 (concluding that the secondary easement in dispute was the "usual and customary mode of entering upon defendant's lands"). Another relevant rule from Laden, which the District Court observed, is that such a secondary easement includes only "either side of the ditch as may be required," which may be used "only when necessary and in such a reasonable manner as not to needlessly increase the burden upon the servient tenement." Laden, 112 Mont. at 306, 116 P.2d at 883. In Sharon, for example, although the Haydens had a right to improve or construct a roadway and use heavy equipment to clear the irrigation ditch, this right was expressly "along the east bank of their irrigation ditch as it flows through Plaintiff Sharon's property." Sharon, 246 Mont. at 188, 803 P.2d at 1084. Accordingly, in order for an alternate route to be established that materially deviates from "either side of the ditch" the servient owner must consent, and it is thereafter the duty of the dominant owner to provide the "necessary upkeep" in maintaining the secondary easement. Laden, 112 Mont. at 308, 116 P.2d at 884.*

¶44Although there is evidence that on two occasions a prior owner had consented to vehicles accessing and driving over the property for the purpose of repairing the Cole Ditch, there is no evidence that Engel, or any other dominant estate ditch owners, had ever attempted to establish, maintain, or improve a vehicle route from the end of what is now the Gampps' entrance drive across the property to the Cole Ditch or its headgate. Thus, the "necessary" alternative vehicle route ordered by the court, in its entirety, simply did not exist prior to this litigation, and, other than gaining entrance through the Gampp's eastern gate, does not include any of the "historic" route asserted by Engel.

¶45Likewise, the District Court did not accord much credence to Engel's "attack-trained" rottweiler theory. To the contrary, the court concluded that "no evidence was presented establishing that the Gampps' dogs were running at large, i.e. freely roaming the property

outside the boundaries of the curtilage surrounding the Gampp residence." The only points on this issue that Engel successfully asserted were that the Gampps were keeping too many dogs, (three instead of two), and perhaps using them as a veiled threat against those whom they believed were trespassers. The substantial evidence clearly shows that these minor victories alone could not sustain a conclusion that Engel was the prevailing party.

¶46Furthermore, Engel claimed that her secondary easement rights prohibit the Gampps from maintaining a locked gate to their property. The court did not disturb the Gampps' right to keep the gate to their private property locked. Also, the court required that Engel must give the Gampps reasonable notice before exercising this new secondary easement right, a condition she adamantly argued against at trial and even now on appeal.

¶47Taking the District Court's three orders as a whole, the only clear claims or issues that Engel prevailed on were first, that the Gampps to some degree intimidated or threatened Engel or her agents, and this in turn impaired her secondary easement rights to some degree; and second, that the Gampps initially denied that vehicle access was necessary and they therefore impaired this right as well. This second point is diminished by the substantial evidence that Engel was unable to demonstrate that such vehicle access was ever actually required by her during the Gampps' ownership. This partial success is not, as a matter of law, sufficient for the determination that Engel was the prevailing party. Therefore, based on the foregoing, we conclude that the District Court erred in awarding attorney fees to Engel as a prevailing party pursuant to § 70-17-112(5), MCA.

### Issue 2

*Did the District Court grant Engel an injunction too narrow in scope given the findings of fact and conclusions of law entered in this matter?*

¶48Engel asserted in her motion to amend that the District Court committed three errors in its order enjoining the Gampps. First, the court failed to sufficiently enjoin the Gampps from interfering with Engel's use of her secondary easement. Next, in a similar context, the court's order that Engel must notify and cooperate with the Gampps before exercising her secondary easement conflicts with the Court's conclusions of law and applicable Montana law. Finally, the court failed to permanently enjoin the Gampps from allowing their dogs to run at large at any time.

¶49The District Court denied Engel's motion in its February 18, 1998 Order, concluding

that her "arguments reflect a misunderstanding of the Court's rulings as to each issue." In its August 20, 1997 Order, the District Court, in describing Engel's vehicle access easement, stated that "notification and cooperation is required between the parties." The court did not expressly enjoin the Gampps from interfering with the use of her secondary easement. The court did, however, permanently enjoin the Gampps from "housing more than two adult dogs on [their] property." The court further enjoined the Gampps from allowing their dogs to "be at large from seven (7) A.M. to nine (9) A.M."

¶50On Engel's first claim of error, we hold that the District Court did not err by failing to expressly enjoin the Gampps from interfering with her secondary easement rights. There is substantial evidence that Engel's access for routine inspections and maintenance is, and always has been, "free and uninterrupted," contrary to her assertion on appeal. As we stated above, the right to access the servient property using a secondary easement is confined by the responsibility of not unreasonably burdening the servient owner. *See Laden*, 112 Mont. at 306, 116 P.2d at 883. Similarly, we have held that a servient owner may maintain a locked gate across an easement so long as it does not "interfere with the use and right reserved to the dominant tenement or estate." *Gabriel v. Wood* (1993), 261 Mont. 170, 176-77, 862 P.2d 42, 45-46 (concluding that "a gate may be constructed across the easement if it is necessary for the reasonable use of the servient estate and does not interfere with reasonable use of the right-of-way") (citations omitted). Thus, the District Court, in recognition of the ongoing animosity between the parties, fashioned an order that balances Engel's reserved right of occasional vehicle access with the Gampps' right to not be unreasonably burdened by this second, secondary easement.

¶51As for Engel's second claim, we must first correct the District Court's August 20, 1997 conclusion that "Montana law does not require the ditch owner to notify the servient landowner before entering thereon to access the ditch or related equipment" and that this rule is found in *Sharon v. Hayden* (1990), 246 Mont. 186, 803 P.2d 1083. This rule simply does not appear in the *Sharon* decision, or any where else in Montana case law, for that matter. Notably, this language was adopted by the court from Engel's own erroneous proposed findings of fact and conclusions of law. To the contrary, we have only held that *permission* of the servient owner is not necessary prior to exercising a lawful use of an easement. *See*, *e.g.*, *Ludwig v. Spoklie* (1996), 280 Mont. 315, 319-20, 930 P.2d 56, 59.

¶52As for the reasonableness of the notice requirement, the District Court clarified its August 20, 1997 Order in its February 18, 1998 Order, a clarification that Engel largely ignores on appeal. The court stated that for the sake of preserving "peace and tranquility"

Engel must only give *notice* by mail or telephone prior to exercising her right to access Cole Ditch by vehicle. The court further stated that this condition "is not a requirement that Ms. Engel obtain the Gampps' *permission* to exercise her secondary easement; nor is it a requirement that the parties must agree as to the necessity for, or the method of, repairs which are to be done." The key difference, apparently lost on Engel, is that the Gampps are not in a position to refuse her access, or dictate the time or manner of her access. Furthermore, under the court's order, the Gampps, too, must cooperate in unlocking their gate, and must otherwise not interfere with Engel's secondary easement rights.

¶53As the court stated in its February 18, 1998 Order, the notice requirement in this instance is "equitable in nature as between these individual parties and does not modify or encumber the secondary easement right which statutorily runs with the land." We agree, and conclude that this determination is based on substantial and credible evidence and is legally correct.

¶54One related issue of merit raised by Engel on appeal, and not fully addressed by the District Court, is how the foregoing locked-gate and notice arrangement will operate should the Gampps not be at home or available when notice is attempted. Engel's primary concern stems from a scenario where immediate access is necessary for emergency headgate repair. It should be noted that the court's requirement of notice and cooperation is a two-way street. Thus, should the Gampps leave their property it would only be reasonable for *them* to give notice to Engel, and cooperate by making arrangements for her access in their absence, such as leaving a key with a designated neutral party. Furthermore, in a legitimate emergency situation, what is reasonable and necessary in terms of accessing the Gampps' property would undoubtedly change. Therefore, the District Court should address such details upon remand to further ensure that the much desired "peace and tranquility" between the parties will be preserved under all conceivable circumstances.

¶55Accordingly, with the mistaken rule of law excised, we conclude that the court's order, permitting the Gampps to retain the right to maintain a locked gate to their property and requiring that Engel give notice in the event vehicle access is necessary, is entirely reasonable under the facts of this emotionally-charged dispute, and grounded on substantial credible evidence as well as correct interpretations of law.

¶56As for the District Court's permanent injunction, we conclude no abuse of discretion occurred. An injunction is appropriate when it appears that the commission or continuance

of an act will produce irreparable injury to the party seeking such relief. *Ducham v. Tuma* (1994), 265 Mont. 436, 442, 877 P.2d 1002, 1006 (citations omitted). A continuing invasion of a property right may constitute an irreparable injury. *Ducham*, 265 Mont. at 443, 877 P.2d at 1006 (citations omitted).

¶57Here, the court correctly enjoined the Gampps from owning more than two dogs, notwithstanding the Gampps' tenuous argument that the rottweilers are not "pets." The number of pets, however, in no way infringes on the secondary easement rights at issue. Instead, what is at stake here is the covenant that prohibits the Gampps from permitting their dogs to "roam freely over the land," the violation of which may conceivably impair Engel's secondary easement rights. The District Court concluded that the Gampps had "encroached upon and impaired" Engel's easement rights by "allowing their Rottweilers to run at large." Even so, the court, in denying Engel's motion to amend, determined that:

Throughout the testimony at trial in the matter, no evidence was presented establishing that the Gampps' dogs were running at large, i.e. freely roaming the property outside the boundaries of the curtilage surrounding the Gampp residence. In matter of fact, it is interesting to note that the testimony at trial showed that Ms. Engel was in violation of the covenant herself and had made no attempt to come into compliance during the course of this litigation, whereas the converse is true of the Gampps. Thus, the Court concludes that the evidence at trial shows that the Gampps are complying with the covenant, and this Court sees no need to permanently enjoin the Gampps from allowing their rottweilers to remain untethered or kenneled.

Although an obvious conflict exists in the District Court's conclusions, we nevertheless conclude that it was not an abuse of discretion to enjoin the Gampps in the limited manner it chose. First, evidence that the Gampps' rottweilers roamed "freely" over the entire 104 acres at any and all times, posing a constant menace to ditch owners, is inconclusive at best. To the contrary, the overwhelming evidence indicates that when "untethered," the dogs were within voice command of one of the Gampps and close to what the District Court identified as the "curtilage" of their residence. Despite allegations that the Gampps' rottweilers were at times less than affable, there is no evidence that either Engel, or her son, or any person acting on her behalf, were ever prevented from lawfully enjoying the use of her secondary easement due to the rottweilers running at large or freely roaming over the land. Even assuming that the Gampps' rottweilers pose a threat to ditch owners when "untethered," the court provided an absolute window of access for ditch owners to perform routine inspection and maintenance on the Cole Ditch without unduly burdening

the servient owners.

¶58Clearly, the purpose of the injunction in this case is not to enforce the restrictive covenants, but to protect Engel's secondary easement rights. We conclude that this is precisely what the District Court accomplished in light of the conflicting evidence and complex factual circumstances it faced. We therefore hold that the District Court did not abuse its discretion when it enjoined the Gampps from allowing their dogs to "be at large from seven (7) A.M. to nine (9) A.M."

¶59Based on the foregoing, the District Court's judgment is reversed and this case is remanded for further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ J. A. TURNAGE

/S/ WILLIAM E. HUNT, SR.

/S/ JIM REGNIER

/S/ TERRY N. TRIEWEILER