No. 02-029

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 313

DONALD B. KOEPPEN and GRACE E. KOEPPEN,

        Plaintiffs and Respondents,

    v.

JON BOLICH and JANLEE RUFF, as TRUSTEE OF
THE HENRY LYNN STITER and M. JO STITER
REVOCABLE TRUST,

        Defendants and Appellants.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
                In and For the County of Ravalli, Cause No. DV 2000-140,
                Honorable Jeffrey H. Langton, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Peter W. LaPanne, LaPanne Law Firm, Missoula, Montana

        For Respondents:

                Douglas D. Harris, Douglas Harris Law Offices, Missoula, Montana

                    Submitted on Briefs:   May 23, 2002

                              Decided:   November 13, 2003

Filed:

                _____
                           Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1    Appellants Jon Bolich and Janlee Ruff, hereinafter referred to interchangeably as Bolich and Ruff or Appellants, appeal from the findings of fact, conclusions of law, order, and final judgment and injunction entered in the District Court for the Twenty-First Judicial District, Ravalli County, in favor of the Respondents, Donald B. Koeppen and Grace E. Koeppen (Koeppens). Appellants contend the District Court's findings are clearly erroneous and its conclusions are incorrect as a matter of law. The findings determined, *inter alia*, that the terminus of Appellants' relocated easement on land adjoining Koeppens' property did not reach Appellants' existing road right of way across Koeppens' property, leaving a gap of some seventy to eighty feet between the old road and new road. The permanent injunction ordered Bolich and Ruff to refrain from entering or interfering with Koeppens' land for purposes of connecting the replacement easement with their existing easement on Koeppen property. The order required Bolich and Ruff to resurface and restore the Koeppen property.

¶2    We affirm.

¶3    We rephrase the Appellants' issues as follows:

¶4    1. Whether the District Court's finding that the terminus of a replacement easement owned by Appellants across land adjoining Koeppens' property missed connecting to Appellants' existing easement before crossing the Koeppen property line is clearly erroneous.

2

¶5    2.   Whether the District Court's injunction enjoining Appellants from using the connection road across Koeppen property was a manifest abuse of discretion.

¶6    3.   Whether the District Court's finding that Appellants must reinstall Koeppens' fence line and gates to a condition equivalent to that which pre-existed Appellants' construction of a relocated easement across adjoining property is clearly erroneous.

¶7    4.   Whether the District Court's finding that Appellants must pay $2,016.00 for remediation of Koeppens' property is clearly erroneous.

¶8    5.   Whether the District Court's finding that Appellants must pay $200.00 for Koeppens' loss of use of their property is clearly erroneous.

¶9    6.   Whether the District Court's conclusion that Appellants are in contempt of court is correct as a matter of law.

¶10    7. Whether the District Court's conclusion to grant Koeppens their costs of suit is correct as a matter of law.

## FACTUAL AND PROCEDURAL BACKGROUND

¶11    This dispute involves real property located in Ravalli County in the vicinity of Kootenai Creek near Stevensville, Montana. Specifically, the dispute involves an easement appurtenant to several tracts of land, including that owned by Respondents, located in Section 17, Township 9 North, Range 20 West, M.M. The essence of the dispute before the District Court was whether there was a physical convergence of the terminus of a relocated easement installed by Appellants on property adjoining that of the Respondents with the

3

roadbed of Appellants' original easement on the adjoining land prior to crossing Respondents' property line.

¶12     Ruff is co-trustee, along with her mother, of the Henry Lynn Stiter and M. Jo Stiter Revocable Trust (Stiter Trust), a trust consisting of approximately thirty-seven and one-half wooded acres near Kootenai Creek.  Bolich, Ruff's brother, is the authorized agent of the Stiter Trust for the purpose of making improvements upon and developing the Stiter Trust property.  The easement at issue in the present dispute is owned by the Stiter Trust. Beginning at Kootenai Creek Road, the easement transverses four parcels of land before reaching the Stiter Trust property, specifically those belonging to the Coxes, the Bushes, the Koeppens (Respondents), and the VanLoons, all of which are situated adjacent to each other in an east-west row, with the Stiter property being the western-most parcel.  Each of these properties is a servient tenement to the easement, the Stiter Trust holding the dominant tenement.  Kootenai Creek, a tributary with a high bluff, actually flows through each of the properties.

¶13     On September 19, 1950, the predecessor in title to Ruff obtained an easement to provide roadway access to the Stiter Trust property.  The easement deed granted a twenty-foot access on the edge of the bluff above Kootenai Creek, to be located as near to the edge of the bluff as possible.  It is undisputed that for over forty years the Stiter Trust easement was physically located on the bluff above Kootenai Creek, roughly parallel to the natural watercourse.  Although the easement was neither surveyed nor depicted as to its exact

4

location, the existence and use of the Stiter Trust easement was noted on Certificate of Survey (COS) 1056, dated June 29, 1976, records of Ravalli County, Montana.

¶14    For many years, the Stiter Trust did not use its easement. In the interim, the predecessors in title to both the Bushes and the Coxes built homesites and backyards physically located either on, or very near, the easement roadbed.  In 1998, the Bushes gave Bolich and Ruff permission to use a temporary route across their property, but this, however, was not a satisfactory arrangement to either of the parties.  Meanwhile, the Bushes and the Coxes attempted to negotiate the purchase of a corner of the Koeppens' property as part of their ongoing efforts to relocate the Stiter Trust easement to a more acceptable location.  Don Koeppen testified he agreed to a price, but withdrew his offer after a year's time when no one paid him for the land.

¶15    In August of 1999, this dispute was precipitated by Bolich's and Ruff's arrival at the Cox property intending to exercise their right to use their easement.  When Appellants were dismantling a swing set in the Bushes' backyard to drive a bulldozer through, the Bushes and the Coxes approached Bolich and Ruff to try to work something out.  Bolich and Bush walked the Bush property for several hours, with Bolich placing stakes marking a route for a relocated easement.

¶16    Two days later, on August 24, 1999, Ruff and her mother as co-trustees of the Stiter Trust, the Bushes, and the Coxes signed an agreement "to settle a dispute involving a Right of Way Deed."  The agreement provided that: (1) Ruff would abandon the Stiter Trust easement across the Cox property in exchange for payment of $35,000 from Cox; and (2)

5

Ruff would abandon the Stiter Trust easement across the Bush property in exchange for a relocated easement on the Bush property. The Bushes agreed to retain Greg Martinson, a professional surveyor, to survey, plat, and file the new twenty-foot easement based on the centerline, as staked by Bolich. The Martinson survey was filed as COS 5920, with minor changes subsequently filed as COS 5940 and COS 5940 ES.

¶17    The Koeppens took no part in the August 24, 1999, agreement. Thus, it became crucial for the Stiter Trust, in order to avoid becoming landlocked, to assure that any relocated roadbed on Bushes' property connected to their existing 1950 easement *on Bush property before it crossed the Bush/Koeppen property line.*

¶18    Following the signing of the agreement in August 1999, Bolich began construction of the relocated easement on Bush property. Thereafter, several confrontations took place between Bolich and Koeppen regarding what Koeppens contended was an impending mismatch of the terminus of Stiter Trust's relocated easement on Bush property and their 1950 road right of way at the Bush/Koeppen property line. Koeppen believed Bolich intended to make the connection by cutting across a corner of his land. Consequently, on March 16, 2000, Koeppens' attorney sent a letter to Ruff as Trustee of the Stiter Trust warning her of this impending mismatch. The letter made clear Koeppens' unwillingness to permit any more of their land, outside of the defined easement to which Ruff was a successor in interest, to be used for road purposes.

6

¶19 Bolich then breached the Bush/Koeppen fence line and plowed approximately seventy to eighty feet of new road across what Koeppens' contended was their property for the purpose of connecting the two roads.

¶20 On May 3, 2000, the Koeppens filed a complaint in the Twenty-First Judicial District Court, Ravalli County, seeking a declaration of trespass, a preliminary and permanent injunction enjoining Bolich and Ruff from entering or interfering with Koeppen's land, and an order to resurface and restore the Koeppen property.

¶21 On July 3, 2000, the District Court held a show cause hearing at which time the Koeppens personally appeared and testified under direct and cross-examination, and exhibits were admitted into evidence. Neither Bolich nor Ruff appeared personally before the Court. On July 18, 2000, the District Court, having determined the Koeppens made sufficient showing, entered the requested preliminary injunction which enjoined Bolich and Ruff from traversing Koeppen property; required them to replace the gate and fence line they had breached in the process of connecting the two roadbeds; and required them to perform all actions necessary to halt erosion of Koeppens' property.

¶22 Ten months later, on May 10, 2001, the Koeppens moved the District Court for an order to show cause why Bolich and Ruff should not be held in contempt for alleged disregard of the preliminary injunction and order. A hearing on the motion was scheduled for July 9, 2001, but was continued by the District Court and consolidated with trial on the merits of the combined complaint and application for injunction.

7

¶23    On August 23 and 24, 2001, a nonjury trial was held.  At the completion of the trial, the District Court Judge, with the consent of counsel and parties, made a personal inspection of the premises under dispute.

¶24    On October 4, 2001, the District Court entered its findings of fact, conclusions of law, and order, incorporating its findings of fact contained in the preliminary injunction order, and granting all of the relief requested by the Koeppens.  The court concluded: (1) the terminus of the relocated easement across Bush property did not reach the 1950 Stiter Trust easement, constituting a trespass; (2) Bolich and Ruff were enjoined from further trespassing upon Koeppens' land for the purpose of connecting the two roads; (3) Bolich and Ruff were to reinstall Koeppens' fence line and gates to a condition equivalent to that which pre-existed Appellants' construction of the relocated easement; (4) Bolich and Ruff were to pay $2,016.00 for remediation of Koeppens' property; (5) Bolich and Ruff were to pay $200.00 for Koeppens' loss of use of their property; and (6) Bolich and Ruff were in contempt of court (with punishment suspended for six months from the date of judgment pending performance of all obligations) for failure to obey the mandates of the preliminary injunction.

¶25    On October 24, 2001, the District Court entered a final judgment and injunction incorporating the District Court's findings from the hearing for preliminary injunction.   On December 6, 2001, subsequent to the notice of appeal, the District Court entered its order awarding costs to the Koeppens.   From the findings of fact and conclusions of law, order, and final judgment and injunction, Bolich and Ruff appeal.

**STANDARD OF REVIEW**

¶26    We review a district court's findings of fact to determine whether they are clearly erroneous, giving "due regard . . . to the opportunity of the trial court to judge of the credibility of the witnesses." *Han Farms, Inc. v. Moliter*, 2003 MT 153, ¶ 9, 316 Mont. 249, ¶ 9, 70 P.3d 1238, ¶ 9 (quoting Rule 52(a), M.R.Civ.P.).

¶27    This Court applies a three-part test in determining whether a district court's findings of fact are clearly erroneous:

> First, the Court will review the record to see if the findings are supported by substantial evidence. Second, if the findings are supported by substantial evidence, we will determine if the trial court has misapprehended the effect of evidence. Third, if substantial evidence exists and the effect of evidence has not been misapprehended, the Court may still find that a finding is clearly erroneous when, although there is evidence to support it, a review of the record leaves the Court with the definite and firm conviction that a mistake has been committed.

*Han Farms*, *Inc.*, ¶ 9 (citations omitted).

¶28    Additionally, in determining whether the trial court's findings are supported by substantial credible evidence, this Court must view the evidence in the light most favorable to the prevailing party. *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, ¶ 24, 28 P.3d 467, ¶ 24.

¶29    Generally, when reviewing a district court's order granting or denying an injunction, we apply a manifest abuse of discretion standard. *M.H. v. Montana High School Ass'n* (1996), 280 Mont. 123, 130, 929 P.2d 239, 243.

¶30    We review conclusions of law to determine whether the district court's interpretation of the law is correct. *Han Farms*, *Inc.*, ¶ 10.

## DISCUSSION

### Issue 1

¶31  **Was the District Court's finding that the terminus of Stiter Trust's relocated easement across land adjoining Koeppen property missed connecting to their existing 1950 easement before crossing the Bush/Koeppen property line clearly erroneous?**

¶32  The District Court found that the terminus of Stiter Trust's relocated easement across the Bush property did not reach their existing road right of way before crossing the Bush/Koeppen property line, leaving a gap of some seventy to eighty feet across the Koeppen property, constituting a trespass.  This finding is not clearly erroneous.

¶33  In determining whether the relocated easement converged with the existing road right of way before crossing the Bush/Koeppen property line, the District Court first examined evidence as to the location and historical use of the original Stiter Trust easement.  The District Court examined the evidence of the "old traveled way" to determine whether the new road converged with it.  The August 16, 1950, "Road Right-of-Way" deed granting an easement to the Stiter Trust contained specific references to Kootenai Creek, and the bluff above it, as the location of the easement:

> Right of way to be 20 (twenty) feet in width, beginning *on the edge of bluff on Kootenai Creek* at the East Line of South East Quarter of the South West Quarter of Section 17 Township 9 North Range 20 West of the Montana Meridian, and running in a Northwesterly direction to North Line of this Quarter; then West along line fence to the Cherry Ranch Ditch, *road to be located on bluff, above creek as near to edge of bluff as possible . . . .* [Emphasis added.]

The phrases "on the edge of bluff on Kootenai Creek" and "road to be located on bluff above creek as near to edge of bluff as possible" described the location of the roadbed.  The District

10

Court regarded both Kootenai Creek and the bluff above it to be natural monuments. "Monuments are facts . . . ." *Buckley v. Laird* (1972), 158 Mont. 483, 492, 493 P.2d 1070, 1075 (citations omitted). "The law, therefore, is that where monuments can be recognized . . . , they are to be taken as the guide in fixing boundaries." *Buckley*, 158 Mont. at 492, 493 P.2d at 1075 (citations omitted). The District Court concluded that the natural monuments referenced in the 1950 Road Right of Way were to be given great strength in determining the location of the Stiter Trust easement.

¶34    In addition to the easement document itself, the District Court also reviewed other documentary, photographic, and testimonial evidence establishing the location of the original Stiter Trust easement. Two Certificates of Survey, COS 1056 and COS 5920, showed the approximate centerline of the twenty-foot road right of way following the course of the creek. Numerous photographs (including Plaintiffs' Exhibits 1, 4, 6, and 8, and Defendants' Exhibits A, B, and C) depicted a discernible roadbed, a red wooden gate, and fence line closely following the creek. Don Koeppen's hand-drawn sketch of the area in dispute (Plaintiffs' Exhibit 10) provided a graphic depiction of the location of the 1950 road right of way as recalled by the Respondent who had lived on the property for eighteen years.

¶35    Marc Bush (Bush), Koeppens' neighbor to the southeast, testified that "Kootenai Creek flows almost next to the existing 20-foot-wide road right-of-way." Bush also testified that "the bluff is the course of the old roadway." Jan VanLoon, Koeppens' neighbor to the northwest, testified that the road right of way located on the bluff next to the creek "ha[d] always been there." Don Koeppen testified the easement ran along the bluff along the line

11

of trees, continuing on the bluff as close to Kootenai Creek as possible. He also testified that access to the Stiter Trust property had always been by way of an old gate on an old fence line next to the bluff close to Kootenai Creek at the Bush/Koeppen property line. He stated the bluff had never flooded, thus remaining permanent during his lifetime on the property.

¶36    In short, although no survey had been made of the easement, the District Court had before it a plethora of credible evidence fixing the location of the 1950 easement. Where exact location of an area in dispute is claimed to be uncertain, as here, the easement access point on the Koeppen land at the Bush/Koeppen boundary, the true location may be established by the best evidence available under the circumstances. *Brady v. State Highway Commission* (1973), 163 Mont. 416, 422, 517 P.2d 738, 741. At the conclusion of the hearing for application of preliminary injunction the Court concluded:

> The one undisputable thing about this easement is it's required to be as near to the edge of the bluff as possible, and the old roadbed was, for 50 years, apparently, was according to the evidence today, as close to the edge of the bluff as possible, and basically used and occupied as such.

¶37    After considering evidence establishing the location of the 1950 road right of way, the District Court next considered evidence regarding the placement of the relocated easement in relationship to the 1950 easement, and whether its terminus converged with the original Stiter Trust easement before crossing the Bush/Koeppen property line.

¶38    The District Court heard much testimony regarding a longstanding red wooden gate across the Stiter Trust easement in an attempt to discern whether the new road connected with the old road on the east side of the Bush/Koeppen fence line. Plaintiffs and Defendants

12

presented conflicting testimony as to where the north-south situs of the old red gate had been located. Marc and Rebecca Bush testified the location of the gate at the Bush/Koeppen property line was as demonstrated on Plaintiffs' Exhibits 4 and 6. These photographs depict an opening for a gate in the north-south fence line two fence sections south of the east-west fence line paralleling Kootenai Creek. Don Koeppen agreed with the Bushes that the old red gate had been located two fence sections south of the east-west fence.

¶39    On the other hand, Bolich and Ruff testified the old red gate had been located further to the south on the north-south fence line, or about two additional fence sections away from the fence section where Koeppen and Bush testified the gate had been located. Bolich reasoned that since the terminus of the relocated easement was precisely where the old red gate had been, i.e. two additional fence sections farther south (by his calculations), then the terminus of the new road, of a necessity, did, in fact, connect with the original easement across Koeppens' property.

¶40    Bolich testified that evidence of tracks existed in the location he had indicated further to the south, supporting a conclusion that that was where the traffic had gone through. Bush countered that no evidence of tracks existed in the location where Bolich indicated, but that evidence of tracks could only be seen two fence sections further north. When both witnesses were asked at trial to mark with a pen the location of the old red gate on Defendants' Exhibit N, Bolich depicted an area approximately four fence sections south of the east-west fence line, whereas Bush depicted an area only two fence sections to the south of the fence.

13

¶41 In an attempt to clarify the testimony presented to the court as to the location of the old red gate, the court questioned Bolich further:

THE COURT : Mr. Bolich, I just want to be real clear here what you're telling the Court.

EXAMINATION

BY THE COURT :

Q. If we look at Exhibit 4, those are the only photographs in evidence of what's been described as the old fence.

A. Yeah . . .

. . .

Q. So you agree with that, that was the fence and that was the gate across the 1950 easement as it existed in 1990, 1991?

A. Yes, sir.

Q. And that - - and the gate that's shown there with a diagonal brace piece, right?

A. Yes, a sag brace.

Q. Right. And so that's - - There's no doubt that's where the gate was on the 1950 easement in 1990, 1991?

A. Yes.

Plaintiffs' Exhibit 4 clearly depicts the old red gate to be no more than two fence sections to the south of the east-west fence line paralleling Kootenai Creek.

¶42 In face of this conflicting testimony, the District Court Judge conducted an on-site inspection of the premises in dispute immediately following the trial. He concluded that the

14

situation on the ground corroborated the photographic and testimonial evidence presented by Koeppen and Bush: the historic old red gate had been located further north than the Defendants were willing to admit or concede. "When there is conflicting evidence, it is within the province of the trier of fact to weigh the evidence and determine the credibility of witnesses; we will not substitute our judgment for that of the trier of fact on such matters." *Garrison v. Averill* (1997), 282 Mont. 508, 518, 938 P.2d 702, 708.

¶43  Appellants argue that the Bush/Koeppen fence line and old red gate had been moved or modified twice making it impossible to determine with certainty where the 1950 easement was located. Specifically, in 1997, two years before the present dispute, Marc Bush, with Koeppen's permission, had completely replaced the Bush/Koeppen fence line because it was dilapidated. In doing so, he removed the historic red wooden gate which functioned as an informal "landmark" for pinpointing the location of the Stiter Trust's original easement. Also, when Greg Martinson surveyed the Bush property after the signing of the August 24, 1999, agreement, he discovered that the Bush/Koeppen fence line was off ten to twelve feet into Koeppens' property. Bush moved the entire fence line ten to twelve feet onto his property to correct the situation. Against this backdrop of shifting fence lines, the District Court found that these two events either did not affect the determination of where the 1950 easement was located, or, "aggravate[d] the scope of the improperly relocated road across the Koeppen property."

¶44  Bolich and Ruff argue that it was always their intent that a connection between the new and old roads be created on the Bush side of the Bush/Koeppen property line. Bolich

15

testified, "I was extremely adamant at all times that everything had to hook up to the old road before it went on Mr. Koeppen's property."  Appellants further assert that the wording of the August 24, 1999, agreement stands as evidence of their intent to create an easement allowing continued access to their property: "The purpose of establishing a new right of way shall be to allow access to the trust property."  Although Bolich and Ruff state they intended to create an easement allowing continued access to their property, evidence adduced at trial could support the District Court's conclusion that it may not have been their intent to create an easement that connected to their 1950 road right of way *on Bush property to the east of the Bush/Koeppen property line.*

¶45     Bush testified that when Bolich staked the terminus of the relocated easement, "from where the old gate was, there could have been a 20-foot difference . . . . [T]hey weren't close to being in the same area."  Certificate of Survey 5920 (Plaintiffs' Exhibit 5) depicting the relocated easement across Bushes' property was created by surveyor Greg Martinson from the stakes *as placed on the ground by Bolich*.  Although Appellants contend the original Stiter Trust easement location as depicted on COS 5920, COS 5940, and COS 5940 ES was only an approximation carried over from the earlier COS 1056, an examination of COS 5920 reveals two undeniable facts: (1) the terminus of the relocated easement on Bushes' property, as staked by Bolich, is located farther from the bluff than is the original Stiter Trust easement; and (2) there is an obvious lack of connection of the 1950 road right of way and the terminus of the relocated easement on the Bush side of the Bush/Koeppen fence line.

16

According to Bush, Bolich's location of the terminus of the relocated easement was no mistake: "[Bolich] picked out where he wanted [the stakes and the easement] to go."

¶46 Koeppen testified that a few days after his attorney had sent the March 16, 2000, letter to Ruff indicating his unwillingness to allot any more of his land to the Stiter Trust easement, he met Bolich at the point of Bolich's impending trespass. Koeppen testified that during that discussion Bolich told him "he could put the road wherever he wanted to." Koeppen additionally testified that Bolich told him he had discovered an old easement across Koeppens' forty acres, which Koeppen knew was not true, and threatened "to bulldoze a 35-foot road right down the middle of our property."

¶47 The District Court concluded that Bolich relocated the replacement easement "exactly where he wanted it," regardless of the property rights of the Koeppens. "It is within the province of the trier of fact to weigh the evidence and assess the credibility of witnesses and we will not second-guess those determinations." *Rafanelli v. Dale* (1996), 278 Mont. 28, 33, 924 P.2d 242, 245 (citing *Double AA Corp. v. Newland & Co.* (1995), 273 Mont. 486, 494, 905 P.2d 138, 142). "Moreover we will uphold a district court's findings when there is substantial evidence to support them even when there is also evidence supporting contrary findings." *Rafanelli*, 278 Mont. at 33, 924 P.2d at 246.

¶48 Finally, Appellants argue it was clearly erroneous for the District Court to find the relocated easement did not reach the original Stiter Trust right of way in light of the testimony of two professional surveyors who testified for the Appellants that the two roads converged. They argue the District Court's finding is especially erroneous considering the

17

fact the Respondents did not hire any surveyors to testify on their behalf. As Respondents correctly counter, Bolich and Ruff made no arguments that the District Court unfairly limited the testimony of surveyors Greg Martinson and Kenneth Jenkins; that it did not allow them to explain the basis of their opinions; or that there was any limitation on their testimony in contravention of Rules 701, 702, and 703, M.R.Evid. The record shows the District Court allowed these experts to testify freely and offer their opinions on the ultimate issue: whether the relocated easement connected with the 1950 road right of way at the Bush/Koeppen property line.

¶49 Greg Martinson, a professional surveyor, who was employed by Bolich "to defend the position of where the easement had been lined out," testified that "[i]t looked to me like [the area that was staked] would [connect up to the other 1950 roadway]." Martinson told the court if the two roads had not connected, he "would have said something." At trial, however, Martinson's testimony that the two roads physically converged was directly impeached by prior inconsistent statements he made to Robert M. Knight, counsel for the Koeppens. Knight testified that after the Appellants' activities did not cease and Koeppens' fence line was breached, Knight called surveyor Martinson. Knight testified that directly after the telephone call with Martinson, he prepared the following Memo to File:

> A. It says I talked with Greg Martinson on the morning of April 25, [2000] at 9:45 a.m. He pulled his survey. He indicated that they had taken the road location for the original 20-foot road off of the Applebury survey [COS 1056] using Applebury's measurements. *He did not relocate the 20-foot roadway or tie it in with the relocated road. He made it clear that they put the relocated roadway exactly where Mr. Bolich wanted it.*

18

*He indicated that he agreed that there was no convergence of the two roadways on the property line and that Mr. Bolich did not procure an easement from Mr. Koeppen, that he had no right to tie the two roads together by bulldozing across.* [Emphasis added.]

¶50 Kenneth Jenkins, another professional surveyor, testified that it was his opinion that the two roads converged. His opinion, however, in a case involving a matter of feet or yards, relied primarily on aerial photographs, rather than the situation as it existed on the ground, to locate the 1950 road right of way. Additionally, Jenkins testified that, in his assessment of whether the two roads connected, he did not rely at all upon the location of the old red gate on the original Stiter Trust right of way.

¶51 Expert opinion may be rejected by the trier of fact. Expert testimony is opinion evidence which the finder of fact is entitled to disregard if it finds the testimony unpersuasive. *Magart v. Schank*, 2000 MT 279, ¶ 10, 302 Mont. 151, ¶ 10, 13 P.3d 390, ¶ 10; *see also Barnes v. United Indus., Inc.* (1996), 275 Mont. 25, 33-34, 909 P.2d 700, 705; *Holenstein v. Andrews* (1975), 166 Mont. 60, 65, 530 P.2d 476, 479. Thus, the District Court was at liberty to give the expert testimony such weight as it deemed was justified.

¶52 In the final analysis, Appellants established that they possessed an easement for a relocated roadway across Bush property by way of the August 1999 agreement. However, as Respondents correctly noted, the Appellants did not identify any legal premise that would permit the relocation of the right of way across the Koeppens' property simply by virtue of relocating their easement across the Koeppens' *neighbors'* property. It is elementary that "an easement is a non-possessory interest in land; a right which one person has to use the land

19

of another for a specific purpose or a servitude imposed as a burden upon the land." *Burleson v. Kinsey-Cartwright*, 2000 MT 278, ¶ 14, 302 Mont. 141, ¶ 14, 13 P.3d 384, ¶ 14. "An easement cannot be created, granted, or transferred except by operation of law, by an instrument in writing, or by prescription." *Burleson*, ¶ 14. The Appellants have not argued that an easement has been created across Koeppens' land to accommodate the roadway which Bolich plowed to join the terminus of the relocated easement on Bushes' property with the 1950 easement on Koeppens' land. It is the law in Montana that

> [d]ominant owners cannot legally be permitted to roam all over the servient tenement in cases such as this; nor can they select a new route of travel, without the consent of the servient owner, whenever the particular route set aside for that purpose becomes founderous, impassible, or merely inconvenient. The duty is primarily upon them, in such instances, to repair their route rather than materially deviate therefrom . . . . "One having an easement in another's land is bound to use it in such a manner as not to injure the rights of the owner of the servient tenement. If the owner of an easement exceeds his rights either in the manner or the extent of its use, or if he enters upon or uses the land of the servient estate for any unauthorized purposes, he is guilty of a trespass and the servient owner may maintain such action . . . ."

*Laden v. Atkeson (*1941), 112 Mont. 302, 308, 116 P.2d 881, 884-85.

¶53 Substantial, credible evidence exists to support the District Court's findings that a large gap existed between the terminus of the relocated easement and the 1950 Stiter Trust easement, and that Bolich connected the two roadways by plowing across Koeppens' land without regard to the Koeppens' property rights. Further, we determine that the District Court did not misapprehend the effect of the evidence. Finally, after review of the record, we are not left with a definite and firm conviction that a mistake has been committed.

Viewing the evidence in the light most favorable to the prevailing party, we hold that the District Court's finding is not clearly erroneous, and affirm.

## Issues 2 through 7

¶54   The parties acknowledge that the remaining issues are, in large part, tied to the resolution of Issue 1.  As to Issue 2, having concluded that the District Court did not err in finding that the terminus of the relocated easement did not connect to the 1950 Stiter Trust road right of way under Issue 1, we hold the District Court's entry of the injunction enjoining Appellants' use of the connection road was not a manifest abuse of discretion, and, thus, affirm.  As to Issues 3, 4, and 5, we hold that each is supported by substantial evidence in the record and, thus, affirm.  As to Issue 6, having affirmed on Issue 3 regarding reinstallation of the fence line and gates, we hold the entry of the contempt order was correct as a matter of law, and, thus, affirm.  And as to Issue 7, since we are affirming on the merits, we also affirm the costs.

¶55   We affirm the judgment of the District Court in its entirety.


/S/ JIM RICE

We concur:

/S/ KARLA M. GRAY
/S/ W. WILLIAM LEAPHART
/S/ JIM REGNIER
/S/ PATRICIA COTTER