FILED

10/21/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 24-0675

DA 24-0675

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 239

PATTI SCHUBERT and STEVE SCHUBERT,

        Plaintiffs, Counter-Defendants,
        Appellants and Cross Appellees,

   v.

JEREMY TOEPP and TYNAGH TOEPP,

        Defendants, Counterclaimants,
        Appellees and Cross-Appellants.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
                 In and For the County of Yellowstone, Cause No. DV-21-1326
                 Honorable Colette B. Davies, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                Michael F. McGuinness, Patten, Peterman, Bekkedahl & Green, P.L.L.C., Billings, Montana

        For Appellees:

                Kellie G. Sironi, Attorney at Law, Billings, Montana

Submitted on Briefs:  August 13, 2025

Decided:  October 21, 2025

Filed:

_____
                      Clerk

Justice Laurie McKinnon delivered the Opinion of the Court.

¶1 Patti and Steve Schubert ("Schuberts") appeal from the May 22, 2024 Order Enforcing Settlement Agreement and Awarding Fees and Costs, issued by the Thirteenth Judicial District Court, Yellowstone County, granting in part Jeremy and Tynagh Toepps' ("Toepps") Motion to Enforce Settlement Agreement. The District Court held that the parties' Memorandum of Understanding ("MOU") was a legally binding agreement that implied that the Schuberts' gate which encroaches onto the Toepps' property ("Encroaching Gate") could remain in place. The District Court also ordered that the Schuberts may use their easement over the Toepps' property for ingress and egress only and awarded Toepps' their attorney fees for costs incurred by enforcing the MOU. The Schuberts appeal the scope of the easement for the Encroaching Gate, the scope of the Access Easement, and the award of the Toepps' attorney fees. The Toepps cross-appeal the District Court's ruling that the terms of the MOU implied that the Encroaching Gate could remain in its current location. We affirm in part and reverse in part.

¶2 We restate the following issues on appeal:

1. *Whether the Distrct Court erred when it found that the terms of the MOU implied that the parties had contemplated that the Encroaching Gate could remain in its current location.*

2. *Whether the District Court erred when it limited the Schuberts' use of the Access Easement to strictly ingress and egress purposes only.*

3. *Whether the District Court abused its discretion by awarding the Toepps their attorney fees associated with enforcing the MOU.*

2

**FACTUAL AND PROCEDURAL BACKGROUND**

¶3 This case concerns the use of two easements that were created upon the subdivision of real property located in Yellowstone County and known as "Tract 7B." In 2016, Thomas and Cheryl Morgan subdivided Tract 7B into Tracts 7B-1 and 7B-2. Thomas Morgan conveyed title to Tract 7B-1 by quitclaim deed to Cheryl Morgan, and both Thomas and Cheryl Morgan continued to own Tract 7B-2 together as joint tenants with right of survivorship. Tract 7B-1 contained a log home with gardens and landscaping and tract 7B-2 contained a barn, a pasture area, and other fixtures, including a well ("Well"). Tract 7B-2 reserved a 30 foot-wide easement across Tract 7-B1 for ingress and egress to and from Tract 7B-2 ("Access Easement"). In 2017, Cheryl conveyed Tract 7B-1 to the Swansons by warranty deed which included an easement for the use, repair, and maintenance of the Well located on Tract 7B-2. Thomas and Cheryl Morgan then conveyed by warranty deed, subject to all existing easements, Tract 7B-2 to the Schuberts. In 2021, the Swansons conveyed by warranty deed Tract 7B-1 to the Toepps, including all appurtenances. The Department of Natural Resources and Conservation listed both the Schuberts and the Toepps as co-owners of the water right associated with the Well as of 2021.

¶4 The Access Easement runs east to west across the Toepps' property and is bordered by the Toepps' fence to the north and a fence to the south. Although the Access Easement is 30 foot wide, the route of ingress and egress is an approximately 10 foot-wide gravel road. Soon after acquiring Tract 7B-2, the Schuberts installed a large, electric gate (the Encroaching Gate) along the western boundary line of the Access Easement and a stand-

3

alone keypad and package delivery box within the easement area. The placement of the Encroaching Gate prevents the Toepps from straightening out their fence along the boundary line with the Access Easement. On multiple occasions, the Schuberts raked the Access Easement with their tractor, employed a push-behind weed whacker, and sprayed for weeds to remove vegetation surrounding the gravel road without giving notice to the Toepps. Gravel kicked up from these activities caused damage to the Toepps' trailer. The Schuberts have also run into the Toepps' fence with their tractor. The Toepps were also concerned about potential hazards to their children, dogs, and livestock given that they did not know what the Schuberts were using to spray for weeds. In addition, the Toepps were trying to get vegetation to grow along their fence. On at least one occasion, Patti Schubert refused to stop removing vegetation when asked to do so by Jeremy Toepp.

¶5     The Schuberts disputed whether the Toepps had any rights to use the Well ("Well Easement") and brought an action in the District Court to quiet title to the Well Easement. The Schuberts argued that Cheryl Morgan did not have the legal authority to convey an easement over Tract 7B-2 for the Well when she sold Tract 7B-1 to the Swansons because she was a joint tenant with Thomas Morgan, who the Schuberts alleged did not agree to such an easement. The Toepps denied that the Morgans did not convey an interest in the Well Easement to the Swansons and counterclaimed that the Encroaching Gate, keypad, and delivery package box, as well as the Schuberts' removal of vegetation, among other conduct, overburdened the Access Easement. In their Answer, the Toepps alleged that the Encroaching Gate was located on the property line between the Access Easement and the Schuberts' property. However, by June 2022, the Toepps had discovered through a

4

surveyor that the Encroaching Gate encroached 7 feet and 6 inches to the north and 2 inches to the east upon the Toepps' property.

¶6     The Honorable Michael Moses conducted a 12-hour mediation between the parties on December 9, 2022.  Near the end of mediation and after the parties had agreed to the terms of the MOU, counsel for the Schuberts presented the Toepps with a proposed judgment, easement grant, and quitclaim agreement.  Needing more time to digest the Schuberts' proposal, the Toepps declined to sign any additional paperwork and instead the parties agreed to amend the MOU to provide that they would stipulate to a "judgement as proposed by Schuberts *and approved by all counsel*" (emphasis added).  The MOU is a printout of an email the Schuberts' counsel sent to Judge Moses with handwritten amendments and signed by Steve and Patti Schubert and Jeremy and Tynagh Toepp, as well as the parties' respective counsel.

¶7     The MOU provides the following terms lightly edited for clarity:

Montana Defense Trial Lawyers ("MDTL") settlement agreement with mutual release.

Schuberts move keypad 3 feet west taking into account existing electrical lines (by July 1, 2023, but will use reasonable efforts to have it done prior, once they return to Montana) if electrical line will adjust 6 inches one way or another.

Schuberts' package box will remain.

West facing camera on Easement OK with angle down the property line.

Payment of $25,000 to Toepps by Schuberts or their insurer within reasonable time following execution of settlement agreement documents.

Schuberts may at their own expense install a 7-foot tall, corrugated steel fence along property line.  If existing fence is determined to be on Schuberts'

5

property per Amended 7B COS 2085, Toepps shall, at their own expense, remove all such portions within 7 days of being provided with written notice of the same. Notice will be provided by email, hand delivered, or USPS first class effective on mailing.

Stipulate to entry of proposed judgment as proposed by Schuberts and approved by all counsel.

Schuberts turn on well when they normally would, based on weather but not later than May 21, 2023.

Schuberts agree to allow Toepps to use well on previous irrigating schedule to July 1, 2023, but Toepps use reasonable efforts to have their own well installed prior to.

¶8 Following mediation, the parties could not agree on the language for the final settlement documents referenced in the MOU. Additional disputes regarding the terms of the MOU and the use of the Access Easement also arose. The Schuberts sought to add a video doorbell, which would face the Toepps' home, and intercom to the keypad and demanded that the Toepps remove a portion of their fence even though it was located on the Toepps' property. The Toepps resorted to contacting Judge Moses on multiple occasions to clarify what the parties had in fact agreed to in mediation. The Schuberts also demanded an expanded easement to accommodate the encroaching Gate ("Gate Easement"). In addition, the Schuberts scraped dirt with a tractor, sprayed weeds, and removed vegetation in the proposed Gate Easement despite the Toepps' requests to refrain from such actions. The Toepps offered to sell the Schuberts a Gate Easement, but the parties could not agree to its dimensions. Ultimately, the Schuberts refused to sign the settlement documents without an expanded Gate Easement according to their proposed

dimensions. The Toepps used the $25,000 to continue installation work for a well on their own property.

¶9 Finding themselves at an impasse, the parties filed competing motions to enforce the MOU in November 2023. The District Court sat without a jury and heard testimony from Patti Schubert and Jeremy Toepp. Patti Schubert admitted to the conduct alleged by the Toepps within the Access Easement and the Schuberts did not controvert the Toepps' evidence that these actions caused damage to their fence and trailer. Near the end of his testimony, Jeremy Toepp explained "I want a clean break as much as possible" from the property dispute with the Schuberts.

¶10 The District Court issued its Order Enforcing Settlement Agreement and Awarding Fees and Costs on May 22, 2024. The District Court reasoned that the terms of the MOU implied that the parties had agreed that the Encroaching Gate could remain in its present location because "[i]f the parties had anticipated that the gate would be moved or removed, neither the keypad nor the package box would have been necessary, relevant elements of the" MOU and that the Encroaching Gate was a critical aspect of the Toepps' counterclaim. Thus, the MOU would not have provided a global resolution to the parties' dispute without contemplating the Encroaching Gate's present location. Regarding the scope of the Access Easement, the District Court found that the Schuberts had overburdened the easement and concluded that the Schuberts may use it strictly for ingress and egress purposes and that they may only take actions on the easement necessary to remedy any obstructions to using it for ingress and egress purposes. The District Court's Order specifically prohibits the Schuberts from "remov[ing] dirt, trees, greenery, or even weeds, that are not required to

7

protect their access rights." As to attorney fees, the District Court found that the Schuberts obstructed finalizing the settlement documents to negotiate better terms than what had been agreed to in the MOU and therefore multiplied the proceedings by forcing the parties to engage in motions practice, including post-hearing filings.

¶11 The Schuberts appeal the District Court's Order Enforcing Settlement Agreement and Awarding Fees and Costs on the scope of the Access Easement and Gate Easement as well as the award of attorney fees. The Toepps cross-appeal as to the conclusion that the Encroaching Gate may remain in its current location.

**STANDARD OF REVIEW**

¶12 We review questions of law, such as the existence and interpretation of a contract, for correctness. *Kluver v. PPL Montana, LLC*, 2012 MT 321, ¶ 19, 368 Mont. 101, 293 P.3d 817 (citing *Hurly v. Lake Cabin Dev., LLC*, 2012 MT 77, ¶ 14, 364 Mont. 425, 276 P.3d 854). "This Court reviews the findings of a trial court sitting without a jury to determine if the court's findings are clearly erroneous." *Guthrie v. Hardy*, 2001 MT 122, ¶ 24, 305 Mont. 367, 28 P.3d 467 (citing Rule 52(a), M. R. Civ. P.). The findings of a district court "are clearly erroneous if they are not supported by substantial credible evidence, if the trial court has misapprehended the effect of the evidence, or if a review of the record leaves this Court with the definite and firm conviction that a mistake has been committed." *Guthrie*, ¶ 24 (citation omitted). We "must view the evidence in the light most favorable to the prevailing party" when "determining whether the trial court's findings are supported by substantial credible evidence." *Guthrie*, ¶ 24 (citation omitted).

8

This Court reviews a trial court's conclusions of law for correctness. *Guthrie*, ¶ 24 (citation omitted); *Mattson v. Mont. Power Co.*, 2009 MT 286, ¶ 15, 352 Mont. 212, 215 P.3d 675.

¶13    Furthermore, when reviewing an award of attorney fees under § 37–61–421, MCA, this Court determines whether the district court abused its discretion. *Larchick v. Diocese of Great Falls-Billings*, 2009 MT 175, ¶ 39, 350 Mont. 538, 208 P.3d 836 (citing *Tigart v. Thompson*, 244 Mont. 156, 159–60, 796 P.2d 582, 584 (1990)); *In re Est. of Bayers*, 2001 MT 49, ¶ 9, 304 Mont. 296, 21 P.3d 3. "A district court abuses its discretion when it acts arbitrarily without conscientious judgment or exceeds the bounds of reason resulting in substantial injustice." *Larchick*, ¶ 39 (citing *In re G.M.*, 2009 MT 59, ¶ 11, 349 Mont. 320, 203 P.3d 818). This Court will "generally defer to the district court's discretion in addressing costs and fees under § 37–61–421, MCA," since the trial court is best positioned "to know the nature and extent of any alleged violation." *Larchick*, ¶ 39 (citation omitted); *see also In re Est. of Bayers*, ¶ 9.

## DISCUSSION

¶14    *1. Whether the District Court erred when it found that the terms of the MOU implied that the parties had contemplated that the Encroaching Gate could remain in its current location.*

¶15    Settlement agreements are contracts and as such are subject to principles of contract law. *Kluver v. PPL Montana, LLC*, 2012 MT 321, ¶ 31, 368 Mont. 101, 293 P.3d 817 (citing *Murphy v. Home Depot*, 2012 MT 23, ¶ 8, 364 Mont. 27, 270 P.3d 72). Once contracting parties have reduced their agreement to a written instrument, "[t]he mutual intent of the parties is to be ascertained from the writing if possible." *Watters v. City of Billings*, 2019 MT 255, ¶ 11, 397 Mont. 428, 451 P.3d 60. When the terms are clear and

9

unambiguous, courts may not insert or delete terms of a contract. *King Res., Inc. v. Oliver*, 2002 MT 301, ¶ 21, 313 Mont. 17, 59 P.3d 1172; § 1–4–101, MCA. This Court gives effect to each contract provision if reasonably practical, with each clause aiding in the interpretation of the others. *Mattson*, ¶ 18. We therefore "grasp the instrument by its four corners[,] and in the light of the entire instrument, ascertain the paramount and guiding intention of the parties." *Kluver*, ¶ 46 (quoting *Steen v. Rustad*, 132 Mont. 96, 102, 313 P.2d 1014, 1018 (1957)). Courts may properly consider the circumstances under which a contract was formed, however, "such evidence is not admissible to add to, vary, or contradict the terms of the contract." *Mattson*, ¶ 18.

¶16 The Schuberts argue that the District Court failed to give full effect to the parties' settlement terms by not including the dimensions for the Gate Easement in the proposed settlement documents. Since the Toepps made the Encroaching Gate an issue, the Schuberts reason, the parties could not reach a global resolution without the Gate Easement. Furthermore, the Toepps ratified the terms of the proposed settlement documents by cashing the $25,000 check referred to in the MOU. The Schuberts reiterate that the plain and unambiguous terms of the MOU when paired with the settlement documents provided for the Gate Easement.

¶17 The flaw in the Schuberts' argument, however, is that nowhere in the four corners of the MOU, the only document signed by all parties, does it reference an easement for the Encroaching Gate. The MOU fully resolved the parties' dispute as to the Well Easement with the Schuberts allowing the Toepps to use the well until July 1, 2023, and requiring the Toepps to use reasonable efforts to install a well on their own property before then. The

10

$25,000 referenced in the MOU is clearly consideration for this agreement. The Toepps needed to cash the check for $25,000 to complete their own well and hence perform their obligations under the MOU. Moreover, the MOU details the size and materials of the Schuberts' proposed fence and creates a mechanism to resolve any issues if the Toepps' fence was found to encroach upon the Schuberts' property. Given the MOU's resolution of such minute details, had the parties contemplated the Encroaching Gate at mediation, then terms resolving its location would have been included in the MOU. The District Court incorrectly interpreted the effect of the terms providing that the keypad and package box would remain within the Access Easement because even if the Encroaching Gate was moved to be entirely within the Access Easement or on the Schuberts' property, these fixtures would still serve ingress and egress purposes for the Schuberts and their guests and permittees.

¶18    The Schuberts' argument hinges on incorporating the proposed settlement documents into the MOU. Presented with additional legal documents late into a lengthy mediation, the Toepps exercised caution and agreed only to sign additional documents "approved by all counsel." It is not the role of the judiciary "to insert what has been omitted" in a written agreement. Section 1–4–101, MCA. This Court therefore will not impose contract terms upon a party based on proposed and unsigned documents that the parties continued to negotiate well after they agreed to the terms of the MOU. Although the District Court evidently sought to resolve all disputes between the parties to provide "a clean break," it erred as a matter of law by inserting language into the MOU upon which the parties never reached an accord.

11

¶19 Accordingly, we reverse the District Court's conclusion that the terms of the MOU implied that the parties agreed that the Encroaching Gate could remain in its current location. Because the Encroaching Gate is an unlawful encroachment onto the Toepps' property, it must be removed. We remand for judgment to be entered accordingly.

¶20 *2. Whether the District Court erred when it limited the Schuberts' use of the Access Easement to strictly ingress and egress purposes only.*

¶21 An easement is an interest in land that is "neither a grant of title to the property nor a possessory interest." *Mattson*, ¶ 51; *see Blazer v. Wall*, 2008 MT 145, ¶ 24, 343 Mont. 173, 183 P.3d 84. Rather, an easement is held by the owner of the dominant estate "consisting of the right to use the land [of the servient estate] for a specific purpose." *Woods v. Shannon*, 2015 MT 76, ¶ 10, 378 Mont. 365, 344 P.3d 413. An express easement is one created by a written instrument. *Woods*, ¶ 10. Thus, the terms of the easement grant determine the extent or scope of an express easement. *Woods*, ¶ 12. This Court has held that easement grants for ingress and egress are "specific in nature." *Woods*, ¶ 14; *Clark v. Pennock*, 2010 MT 192, ¶ 27, 357 Mont. 338, 239 P.3d 922. "Where an easement is specific in nature, the breadth and scope of the easement are strictly determined by the actual terms of the grant." *Mason v. Garrison*, 2000 MT 78, ¶ 21, 299 Mont. 142, 998 P.2d 531. The holder of an easement has not only the right but the duty to "make repairs necessary for the reasonable and convenient use of the easement, *doing no unnecessary injury to the servient estate*." *Guthrie*, ¶¶ 59–60 (quoting *Laden v. Atkeson*, 112 Mont. 302, 306, 116 P.2d 881, 883 (1941)) (emphasis added). Thus, the rule is that the holder of an easement may not "cause unreasonable damage to the servient estate or interfere

12

unreasonably with its enjoyment" unless clearly authorized to do so by the terms of the easement grant. *Mattson*, ¶ 47.

¶22 The Schuberts liken their dispute with the Toepps to that in *Strahan v. Bush*, 237 Mont. 265, 773 P.2d 718 (1989). In *Strahan*, this Court upheld an injunction preventing the servient estate owner from placing a gate that interfered with ingress and egress rights of the dominant estate and ordered that the servient estate owner install a cattle guard in front of the disputed gate as "an appropriate solution to address the [dominant estate owner's] interest" in cattle grazing. *Strahan*, at 269, 773 P.2d at 721. In upholding the district court, we noted that "a court sitting in equity causes is empowered to determine the questions involved in the case to do complete justice." *Strahan*, at 270, 773 P.2d at 771. The Schuberts further contend that their actions on the Access Easement are consistent with Montana case law upholding an easement holder's rights and duties to maintain their easement, and that the Toepps have failed to provide any evidence of unnecessary injury to their property. The Toepps, on the other hand, point out the vegetation removed in *Woods* was for the construction of a driveway, not for maintenance around an existing driveway. *Woods*, ¶ 3.

¶23 Here, The Schuberts' predecessors in interest, the Morgans, reserved an express easement over the Toepps' property "as a means of ingress and egress to and from Tract 7B-2 . . . including the right of ingress and egress for the purposes of installing, maintaining and repairing utilities." This easement by reservation is specific in nature based on the terms of the warranty deed for Tract 7B-1 conveyed by Cheryl Morgan to the Swansons. The scope of the Schuberts' easement is limited to ingress and egress, including for utility

13

work, for the benefit of Tract 7B-2 within the south 30 feet of the Toepps' property. The District Court heard substantial credible evidence that the Schuberts' actions on the Access Easement overburdened the easement by causing unnecessary harm to the Toepps' property. Jeremy Toepp testified that the Schuberts have run into the Toepps' fence and that their weeding operations caused pockmarks to their trailer; this testimony was uncontroverted. Patti Schubert testified that the vegetation did not interfere with her ability to use the existing gravel driveway and instead appears from the record to have been mostly concerned with the aesthetics of the Access Easement. The District Court found that after mediation, the Schuberts began to access the Toepps property within the proposed Gate Easement to scrape dirt with their tractor, spray weeds, and dig up vegetation. Given that the vegetation did not obstruct the Schuberts' use of the ten-foot-wide driveway, the damage caused by the Schuberts' purported maintenance of the Access Easement resulted in unnecessary injury to the Toepps' property. The Schuberts' use of the Access Easement beyond ingress and egress purposes overburdened the easement and interfered with the Toepps' enjoyment of their property.

¶24 We agree with the Schuberts, however, that this case bears some semblance to *Strahan*. Here, the District Court exercised its equitable powers in an effort to resolve ongoing disputes between acrimonious neighbors whose properties are wedded together by the Access Easement. The District Court's instructions to the Schuberts to use the Access Easement strictly for ingress and egress and to only take actions necessary to preserve their ingress and egress rights is an appropriate remedy based on substantial credible evidence

14

that the Schuberts have overburdened the Access Easement.[1]  We therefore affirm the District Court's Order regarding the permissible scope of the Schuberts' use of the Access Easement for ingress and egress purposes only.

¶25    *3. Whether the District Court abused its discretion by awarding the Toepps attorney fees associated with enforcing the MOU.*

¶26    Section 37–61–421, MCA, provides that a party "who, in the determination of the court, multiplies proceedings in any case unreasonably and vexatiously may be" liable for reasonable attorney fees.  We have previously affirmed an award for attorney fees under this Section when a party was found to have frustrated prior stipulations.  *In re Marriage of Lewton*, 2012 MT 114, ¶¶ 29–30, 365 Mont. 152, 281 P.3d 181.  In addition to the attorney fees available under § 37–61–421, MCA, the District Court reasoned that because the MOU included a MDTL release, which ordinarily includes a provision for attorney fees, the parties contemplated attorney fees when negotiating the MOU.  The Schuberts focus primarily on the impact of their motion to enforce their interpretation of the MOU and that there was a genuine dispute between the parties regarding the terms of the agreement.  Additionally, the Schuberts remind the Court of our prior warning that "courts must act with circumspection in penalizing attorneys under this statute in order to avoid the chilling of an attorney's legitimate ethical obligations to represent his client zealously."

---

[1] Our holding here does not depart from the long-standing principle that although the Schuberts, as the dominant estate holder, have the right and duty to maintain their easement, any maintenance by the Schuberts should be reasonably tailored to preserving only their ingress and egress rights and must be conducted "in such a manner as not to injure the rights of the" Toepps' servient estate. *Anderson v. Stokes*, 2007 MT 166, ¶ 54, 338 Mont. 118, 163 P.3d 1273 (quoting *Koeppen v. Bolich*, 2003 MT 313, ¶ 52, 318 Mont. 240, 79 P.3d 1100) (collecting cases).

*Sheffield Ins. Co. v. Lighthouse Props., Inc.*, 252 Mont. 321, 327, 828 P.2d 1369, 1373 (1992) (*Sheffield II*) (internal quotations omitted).

¶27 The record confirms the District Court's finding that the Toepps would not have incurred fees associated with enforcing the MOU but for the Schuberts' demand for an additional Gate Easement that was not contemplated during mediation. The Schuberts' focus on the impact of their own motion to enforce the MOU is misplaced because it was not so much the Schuberts' motion to enforce that multiplied proceedings but, rather, their insistence that the MOU included a Gate Easement, despite the plain terms of the agreement entirely omitting such a stipulation. The Schuberts added new terms that were never memorialized in the MOU *after* mediation and refused to execute the final settlement documents, thereby needlessly multiplying proceedings, including a hearing and post-hearing briefings. The instant case is readily distinguishable from *Sheffield II* because there we overturned an award of attorney fees against a party who amended their complaint to include a plausible theory of liability that would reach the defendant's liability insurance policy. Here, on the other hand, the Schuberts came to an agreement with the Toepps, memorialized in the MOU, and then insisted that the Toepps make more concessions in addition to those made during mediation.

¶28 The District Court is in the best position to determine when a party unreasonably and vexatiously multiplies proceedings. Based on the record before us, the District Court did not abuse its discretion when it awarded the Toepps their attorney fees incurred in enforcing the MOU. We therefore affirm the District Court's award of attorney fees.

16

**CONCLUSION**

¶29    The District Court's order as to the scope of the Access Easement and the award of attorney fees is affirmed.  The District Court's order concluding that the Gate Easement was implicitly included in the MOU is reversed.  Because the Gate Easement is an unlawful encroachment onto the Toepps' property it must be removed.  We remand to the District Court for judgment to be entered accordingly.[2]

/S/ LAURIE McKINNON

We Concur:

/S/ CORY J. SWANSON
/S/ KATHERINE M. BIDEGARAY
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA

---

[2] On June 5, 2025, Schuberts filed a motion to strike portions of Toepps' Reply Brief relative to the Toepps' cross appeal.  Schuberts also have specifically requested that this Court strike the Toepps' Exhibit A-1 which was attached to their Reply Brief.  Toepps have filed a response in opposition to Schuberts' motion to strike.  After considering both the motion and response, we conclude Exhibit A-1 should be stricken because it was not admitted in the District Court and is not part of the record.  However, our decision in these proceedings was not based on Exhibit A-1 and that exhibit has not affected our holding. Regarding the remainder of the Schuberts' motion, we conclude that these proceedings and the record involved numerous intertwined issues that overlap.  We, therefore, deny Schuberts' motion to strike pages 14–21 of Toepps' Reply Brief related to the Toepps' cross-appeal.